Adam E. Polk (SBN 273000)
Simon Grille (SBN 294914)
Reid Gaa (SBN 330141)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
apolk@girardsharp.com
sgrille@girardsharp.com
rgaa@girardsharp.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCINDA JACKSON and MATTHEW BEKE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FANDOM, INC.,<br><br>Defendant. | Case No. 4:22-cv-04423-JST<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Hon. Jon S. Tigar |

Plaintiffs Lucinda Jackson and Matthew Beke, on behalf of themselves and all others similarly situated, allege as follows based on personal knowledge and on information and belief based on investigations of counsel.

**INTRODUCTION**

1. This is a consumer privacy class action against Fandom, Inc. ("Fandom")—the self-described "world's largest entertainment & gaming fan platform"—for violating the Video Privacy Protection Act ("VPPA" or "the Act") by disclosing its digital users' identities and video-viewing preferences to Meta Platforms, Inc. ("Meta") without proper consent. Meta owns the popular social media platforms Facebook and Instagram.

2. The VPPA prohibits "video tape service providers," such as Fandom, from knowingly disclosing consumers' personally identifiable information ("PII"), including "information which identifies a person as having requested or obtained specific video materials or services from a video tape provider," without the person having expressly given consent in a standalone consent form.

3. Fandom collects and shares users' personal information with Meta using a "Meta Pixel" or "Pixel." A Meta Pixel is a snippet of programming code that tracks users as they navigate through a website, including what searches they performed and which items they have clicked on or viewed.

4. The Meta Pixel sends information to Meta in a data packet containing PII, such as the users' IP address, name, email, or phone number. Meta then stores this data on its own servers.

5. In this case, by its incorporation of Meta Pixel, Fandom shared PII with Meta including at least the user's Facebook Profile ID and the title of the video that the user watched. A user's Facebook Profile ID is linked to their Facebook profile, which generally contains a wide range of demographic and other information about the user, including pictures, personal interests, work history, relationship status, and other details.

6. Fandom discloses the user's Facebook Profile ID and viewing content to Meta together in a single, unencrypted transmission in violation of the VPPA. Because the user's Facebook Profile ID uniquely identifies an individual's Facebook account, Meta—or any other person—can use the Facebook Profile ID to quickly and easily locate, access, and view the user's corresponding Facebook

profile. In other words, the Pixel allows Meta to know what video content one of its users viewed on Fandom's website.

7. Fandom users do not consent to Fandom's disseminations of users' viewing content along with Facebook Profile IDs to a third party through a standalone consent form, as required by the VPPA. As a result, Fandom violates the VPPA by disclosing this information to Meta.

8. On behalf of a Class of similarly situated Fandom users, Plaintiffs seek relief through this action. Based on the facts set forth in this Complaint, Fandom violated the Video Privacy Protection Act ("VPPA") and is liable for unjust enrichment.

## PARTIES

9. Plaintiffs used their Internet-connected devices and Web-browsing software ("browser") installed on those devices to visit and watch video content on Fandom's website, http://www.fandom.com, during the Class Period as defined herein.

10. Plaintiff Lucinda Jackson is a citizen and resident of Cuyahoga Falls, Ohio.

11. Plaintiff Matthew Beke is a citizen and resident of Ames, Iowa.

12. Defendant Fandom is a Delaware corporation headquartered at 130 Sutter Street, 4th Floor, San Francisco, CA 94104.

## DIVISIONAL ASSIGNMENT

13. Pursuant to Civil L.R. 3-5(b), assignment to the San Francisco Division is appropriate under Civil L.R. 3-2(c) because Fandom is headquartered in San Francisco and a substantial part of the conduct at issue in this case occurred in San Francisco County.

## JURISDICTION AND VENUE

14. This Court has original jurisdiction under 28 U.S.C. § 1331 based on Plaintiffs' claims under the Video Privacy Protection Act, 18 U.S.C. § 2710.

15. This Court also has jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a proposed class action in which: (1) there are at least 100 Class members; (2) the combined claims of Class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Defendant and at least one Class member are domiciled in different states.

16. This Court has personal jurisdiction over Fandom because its principal place of business is within this District and it has sufficient minimum contacts in California to render the exercise of jurisdiction by this Court proper and necessary.

17. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## PLAINTIFF-SPECIFIC ALLEGATIONS

### Lucinda Jackson

18. Plaintiff uses her internet-connected devices and the web-browsing software ("browser") installed on those devices to visit and watch video content on Fandom's website, https://www.fandom.com, during the Class Period as defined herein.

19. Plaintiff Lucinda Jackson is a citizen and resident of Cuyahoga Falls, Ohio.

20. Plaintiff Jackson maintains a registered account with Fandom and is thus a subscriber to Fandom's services.

21. Plaintiff Jackson provided Fandom with her PII, including her name and email address, when subscribing to its services.

22. Plaintiff Jackson has maintained a Facebook account for over 10 years and spends approximately 4 to 5 hours per day on Facebook. Plaintiff Jackson's Facebook profile includes personal information about her including her name and other personal details.

23. Plaintiff Jackson has maintained an Instagram account for approximately 4 to 5 years and spends about 30 minutes per day on Instagram.

24. Plaintiff Jackson visited the Fandom website using her web browser on numerous occasions to view video content.

25. Plaintiff Jackson requests and watches videos on Fandom using the same browser that she uses to login to Facebook, including while she is logged in to Facebook. Plaintiff Jackson uses the same device to request and watch videos on Fandom that she uses for Facebook and Instagram.

26. Fandom sent to Meta Plaintiff Jackson's PII, including her Facebook Profile ID, as well as the title of each video she viewed, without obtaining consent through a standalone consent form.

27. Plaintiff Jackson has seen targeted advertisements on Facebook after watching related videos on the Fandom website.

28. Plaintiff Jackson's PII and viewing history are private and confidential in nature and assets to which no third party has a presumptive right to access without a standalone consent form.

**Matthew Beke**

29. Plaintiff uses his internet-connected devices and the web-browsing software ("browser") installed on those devices to visit and watch video content on Fandom's website, https://www.fandom.com, during the Class Period as defined herein.

30. Plaintiff Matthew Beke is a citizen and resident of Ames, Iowa.

31. Plaintiff Beke maintains a registered account with Fandom and is thus a subscriber to Fandom's services.

32. Plaintiff Beke provided Fandom with his PII, including his name and email address, when subscribing to its services.

33. Plaintiff Beke has maintained a Facebook account for approximately 8 years and spends approximately 15 minutes per day on Facebook. Plaintiff Beke's Facebook profile includes personal information about him including his name and other personal details.

34. Plaintiff Beke visited the Fandom website using his web browser on numerous occasions to view video content.

35. Plaintiff Beke requests and watches videos on Fandom using the same browser that he uses to login to Facebook, including while he is logged in to Facebook. Plaintiff Beke uses the same device to request and watch videos on Fandom that he uses for Facebook and Instagram.

36. Fandom sent to Meta Plaintiff Beke's PII, including his Facebook Profile ID, as well as the title of each video he viewed, without obtaining consent through a standalone consent form.

37. Plaintiff Beke has seen targeted advertisements on Facebook after watching related videos on the Fandom website.

38. Plaintiff Beke's PII and viewing history are private and confidential in nature and assets to which no third party has a presumptive right to access without a standalone consent form.

## COMMON ALLEGATIONS

**A.     Fandom Disclosed Plaintiffs' and Class Members' Private Viewing Information to Meta.**

39.     Fandom is an entertainment and gaming platform for fans which "help[s] 315 million people worldwide go deeper on their favorite games, entertainment and culture with unique tools, memorable experiences, original content and commerce."[1] It is a "deep repository of information about fictional universes."[2] As such, Fandom's website and application contains a vast amount of content regarding fictional television shows, movies, and games.

40.     Fandom provides prerecorded audiovisual content on its website, which Plaintiffs requested and viewed.

41.     While Plaintiffs and Class members were viewing video content on Fandom's website, Fandom transmitted this information to Meta, the multinational technology conglomerate that owns social media networks www.Facebook.com ("Facebook") and www.Instagram.com ("Instagram").

42.     Fandom's transmission of viewing information to Meta included the specific names of video content viewed by users, as well as the user's Facebook Profile ID, a string of numbers unique to each Facebook profile that personally identified the user.

43.     Anyone who possesses a Facebook Profile ID may use this number to quickly and easily locate, access, and view the corresponding Facebook profile, which may contain a vast amount of personal information.

44.     While Meta can easily identify any individual on its Facebook platform with only their unique Facebook Profile ID, so too can any ordinary person who comes into possession of a Facebook Profile ID. Facebook admits as much on its website. Simply put, with only a Facebook Profile ID and the video content name and URL—all of which Defendant knowingly provides to Meta without appropriate consent from its subscribers—any ordinary person could learn the identity of the Fandom subscriber and the specific video or media content they requested on Defendant's website.

45.     Facebook profiles may contain a Facebook user's name, gender, birthday, place of residence, career, educational history, a multitude of photos, and the content of a Facebook user's posts.

---

[1] https://about.fandom.com/what-is-fandom (last visited September 15, 2022).
[2] https://about.fandom.com/about (last visited September 15, 2022).

This information may reveal even more sensitive personal information—for instance, posted photos may disclose the identity of family members, and written posts may disclose religious preferences, political affiliations, personal interests and more.

46. Fandom transmitted the video title and Facebook Profile ID information in a single, unencrypted transmission, through a non-customer facing tracking tool called a "Meta Pixel."

47. Meta Pixel is a snippet of programming code that, once installed on a webpage, sends to Meta data relating to the interactions a user takes on a particular website. Meta Pixel tracks users as they navigate through the website and logs which pages are visited, buttons are clicked, and, in this case, which videos a user requested and viewed on Fandom.

48. Meta Pixel is an advertising and analytics tool that allows website owners to track visitor actions on their websites and send the corresponding information to Meta; websites use the Pixel to collect analytical data about how users use its website and in turn, are able to target more specific ads to their users. Thus, the Pixel is installed within the code of a website, such as Fandom, to increase the business's profits.

49. Further demonstrating that Defendant knowingly placed the Pixel in its website code, Meta's own website states that "[t]he Meta Pixel and Facebook SDK are tools that businesses can *choose* to add to their website or app."[3] (Emphasis added).

50. Meta offers its Pixel tool to websites across the internet. As of January 2022, more than 30 percent of popular websites have an embedded Meta Pixel.

51. Fandom voluntarily chose to install the Meta Pixel within the code of its website.

52. Meta benefits from websites like Fandom installing its Pixel. When the Pixel is installed on a business's website, the business has a greater incentive to advertise through Facebook or other Meta-owned platforms, like Instagram. In addition, even if the business does not advertise with Meta, the Pixel assists Meta in building more fulsome profiles of its own users, which in turn allows Meta to profit from providing more targeted ads. The Pixel is installed on websites all over the internet and, accordingly, provides Meta with information about its users' preferences, other distinguishing traits, and web-browsing activities outside of Meta-owned platforms.

---

[3] https://www.facebook.com/help/331509497253087/ (last visited September 15, 2022).

53. Using the Meta Pixel likewise benefits Fandom by providing it with analytical data about its website and improving its ability to promote its content and services to its users. For instance, the data collected through the Meta Pixel is provided to Fandom in Meta's "Events Manager," which works with the Meta Pixel to provide website operators with a summary of user activity captured by the Meta Pixel. Meta also offers tools and analytics to reach certain individuals through Facebook ads. Fandom can use this information to create "custom audiences" through Meta to target the specific Facebook user, as well as other Facebook users who match members' of the audience's criteria. Fandom can also sort through the data collected by Meta Pixel to find specific types of users including, for instance, women over a certain age. Fandom also profits from selling parts of their website to display advertisers.

54. Through use of the Meta Pixel, Fandom—in the same transmission—discloses to Meta the full name of each video a user watched, together with the user's Facebook Profile ID, thus linking users' browsing activities and preferences to their Facebook profiles. In other words, this single transmission connects a user's video viewing choices with their Facebook Profile ID.

55. Fandom violates and invades the privacy rights of users with its practice of sending their Facebook Profile IDs to Meta. Plaintiffs and Class members did not consent to Fandom's disclosure of their viewing content and their identities to Meta.

56. The VPPA requires that consent be obtained in a form "distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C. § 2710. Fandom's website includes its Terms of Use and a Privacy Policy, neither of which operate as a standalone consent form disclosing the information shared through the Meta Pixel and requesting user consent. Accordingly, no user provided Fandom with the level of consent required by the VPPA for disclosure of their viewing content and identities to Meta.

**B. Plaintiffs and Class Members Suffered Harm as a Result of Fandom's Privacy Violations.**

57. Fandom shared Plaintiffs' personal information (including their video viewing histories and associated Facebook Profile IDs, which they reasonably expected would be kept private) with Meta.

58. The personal information Fandom obtained from Plaintiffs and Class members constitutes valuable data in the digital advertising-related market for consumer information. Fandom's wrongful acquisition and use of their personal, private information deprived Plaintiffs and Class

members of control over that information and prevented them from realizing its full value for themselves.

59. Fandom's conduct has resulted in economic harm to Plaintiffs and Class members whose PII diminished in value when Fandom made this information available to Meta.

60. The harms described above are aggravated by Fandom's continued retention and commercial use of Plaintiffs' and Class members' personal information, including their private video viewing histories.

## CLASS ALLEGATIONS

61. Plaintiffs bring this lawsuit under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), and/or (c)(4) as representatives of the following Class:

> **Nationwide Class**: All persons residing in the United States who viewed video content on Fandom, were Facebook or Instagram users during the time Meta's Pixel was active on Fandom, and were logged into Facebook or Instagram during the time Meta's Pixel was active on Fandom.

62. The "Class Period" is from January 1, 2013 to the present.

63. Excluded from the Class are Defendant, its employees, agents and assigns, and any members of the judiciary to whom this case is assigned, their respective court staff, the members of their immediate families, and Plaintiffs' counsel.

64. Plaintiffs reserve the right to modify, change, or expand the Class definition based upon discovery and further investigation.

65. **Numerosity**: The Class consists of at least hundreds of thousands of individuals, making joinder impractical.

66. **Commonality and Predominance**: Common questions of law and fact exist with regard to each of the claims and predominate over questions affecting only individual Class members. Questions common to the Class include:

   a. Whether Fandom's use of the Meta Pixel was without user consent or authorization;

b. Whether Fandom obtained and shared or caused to be obtained and shared Plaintiffs' and Class members' personal information through tracking using Meta Pixel, which Fandom installed on its webpages;

c. Whether other third parties obtained Plaintiffs' and Class members' personal information as a result of Fandom's conduct described herein;

d. Whether Fandom's conduct violates the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq.*;

e. Whether Fandom was unjustly enriched as a result of sharing users' information with Meta;

f. Whether Fandom's acquisition and transmission of Plaintiffs' and Class members' personal information resulted in harm; and

g. Whether Fandom should be enjoined from engaging in such conduct in the future.

67. **Typicality**: Plaintiffs' claims are typical of the claims of the Class members in that Plaintiffs, like all Class members, has been injured by Fandom's misconduct—disclosing users' PII and viewing content to Meta without consent.

68. **Adequacy of Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions, including privacy protection cases. Plaintiffs do not have any interests antagonistic to those of the Class.

69. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Fandom to comply with federal law. Moreover, because the amount of each individual Class member's claim is small relative to the complexity of the litigation, and because of Fandom's financial resources, Class members are unlikely to pursue legal redress individually for the violations detailed in this complaint. A class action will allow these claims to be heard where they would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

70. **Injunctive relief**: Fandom has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole.

## TOLLING OF THE STATUTES OF LIMITATIONS

71. All applicable statute(s) of limitations have been tolled by Fandom's knowing and active concealment and denial of the facts alleged herein. Plaintiffs and Class members could not have reasonably discovered Fandom's practices of sharing their personal viewing content and PII with Meta until shortly before this class action litigation commenced.

72. Fandom was and remains under a continuing duty to disclose to Plaintiffs and Class members its practice of sharing personal viewing content and PII to Meta. As a result of the active concealment by Fandom, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FIRST CAUSE OF ACTION
### Violation of the Electronic Communications Privacy Act (Video Privacy Protection Act), 18 U.S.C. § 2710, *et seq.*

73. Plaintiffs incorporate and reallege the above factual allegations by reference.

74. The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally-identifying information" concerning any consumer to a third-party without the "informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C. § 2710.

75. As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials." Fandom is a "video tape service provider" as defined in 18 U.S.C. § 2710(a)(4) because it engaged in the business of delivering audiovisual materials that are similar to prerecorded video cassette tapes and those deliveries affect interstate or foreign commerce.

76. As defined in 18 U.S.C. § 2710(a)(3), "personally identifiable information" is defined to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

77. Fandom knowingly caused personal viewing information, including Facebook Profile IDs, concerning Plaintiffs and Class members to be disclosed to Meta. This information constitutes personally identifiable information under 18 U.S.C. § 2710(a)(3) because it identified each Plaintiff and Class member to Meta as an individual who viewed Fandom's content, including the specific video materials requested and watched on Fandom.

78. As defined in 18 U.S.C. § 2710(a)(1), a "consumer" means "any renter, purchaser, or subscriber of goods or services from a video tape service provider." As alleged above, Plaintiffs are subscribers to Fandom's services which provide video content to users on its website. Thus, Plaintiffs are "consumers" under this definition.

79. As set forth in 18 U.S.C. § 2710(b)(2)(B), "informed, written consent" must be (1) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; and (2) at the election of the consumer, is either given at the time the disclosure is sought or is given in advance for a set period of time not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner. Fandom failed to obtain informed, written consent under this definition.

80. Additionally, the VPPA creates an opt-out right for consumers in 18 U.S.C. § 2710(b)(2)(B)(iii). The Act requires video tape service providers to "provide[] an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." Fandom failed to provide an opportunity to opt out as required by the Act.

81. Fandom was aware that the disclosures to Meta that were shared through the Pixel identified Plaintiffs and Class members. Fandom also knew that Plaintiffs' and Class members' personal viewing content was disclosed to Meta because Fandom programmed the Meta Pixel into its website code, knowing that Meta would receive video titles and the subscriber's Facebook Profile ID when a user watched a video.

82. By disclosing Plaintiffs' and Class members' personal viewing content, Fandom violated Plaintiffs' and Class members' statutorily protected right to privacy in their video-watching habits. *See* 18 U.S.C. § 2710(c).

83.     As a result of the above violations, Fandom is liable to Plaintiffs and Class members for actual damages related to their loss of privacy in an amount to be determined at trial or, alternatively, for "actual damages but not less than liquidated damages in an amount of $2,500" per plaintiff. 18 U.S.C. § 2710(c)(2)(A). Under the Act, Fandom is also liable for reasonable attorney's fees, other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury and sufficient to prevent and deter the same or similar conduct by Fandom in the future.

## SECOND CAUSE OF ACTION
### Unjust Enrichment

84.     Plaintiffs incorporate and reallege the above factual allegations by reference.

85.     Fandom acted wrongfully by sharing users' Facebook Profile ID and viewing content to Meta without users' consent.

86.     Fandom's practice of sharing users' personal information and viewing content with Meta without their consent through a standalone consent form, caused Fandom to profit from advertisement revenue it would otherwise not have received.

87.     Fandom's retention of these ill-gotten gains is unjust and inequitable.

88.     Plaintiffs, on behalf of themselves and the Class, accordingly seeks restitution, restitutionary disgorgement, and all other appropriate relief permitted by the law of unjust enrichment. There is no adequate remedy at law that would provide redress to Plaintiffs and the Class or ensure that Fandom will not deploy the same data practices in the future.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully requests that the Court:

  A.     Certify this case as a class action, and appoint Plaintiffs as Class Representatives and the undersigned attorneys as Class Counsel;

  B.     Enter judgment in favor of Plaintiffs and the Class;

  C.     Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiffs and Class members, including reformation of practices and an accounting and purging of wrongfully obtained personal information;

        D.     Award all actual, general, special, incidental, statutory, treble, punitive, liquidated, and consequential damages and/or restitution to which Plaintiffs and Class members are entitled;

        E.     Award disgorgement of monies obtained through and as a result of the wrongful conduct alleged herein;

        F.     Award Plaintiffs and Class members pre- and post-judgment interest as provided by law;

        G.     Enter such other orders as may be necessary to restore to Plaintiffs and Class members any money and property acquired by Defendant through its wrongful conduct;

        H.     Award Plaintiffs and Class members reasonable litigation expenses and attorneys' fees as permitted by law; and

        I.     Award such other and further relief as the Court deems necessary and appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all issues triable as of right.

Dated: August 11, 2023                    Respectfully submitted,

By: */s/ Simon Grille*
Adam E. Polk (SBN 273000)
Simon Grille (SBN 294914)
Reid Gaa (SBN 330141)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
apolk@girardsharp.com
sgrille@girardsharp.com
rgaa@girardsharp.com

*Attorneys for Plaintiffs*