Adam E. Polk (SBN 273000)
Simon Grille (SBN 294914)
Reid Gaa (SBN 330141)
Anthony Rogari (SBN 353784)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
apolk@girardsharp.com
sgrille@girardsharp.com
rgaa@girardsharp.com
arogari@girardsharp.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| MATTHEW BEKE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FANDOM, INC.,<br><br>Defendant. | Case No. 4:22-cv-04423-JST<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO EXCLUDE OR, IN THE ALTERNATIVE, TO STRIKE EXPERT DECLARATION OF RON SCHNELL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Jon S. Tigar<br>Date:  September 12, 2024<br>Time: 2:00 pm |

**REDACTED - FILED UNDER SEAL**

---

PLAINTIFF'S MOTION TO EXCLUDE OR, IN THE ALTERNATIVE, TO STRIKE EXPERT
DECLARATION OF RON SCHNELL
CASE NO. 4:22-CV-04423-JST

**TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I. INTRODUCTION ................................................................................................................. 1

II. STATEMENT OF ISSUES TO BE DECIDED ................................................................... 2

III. LEGAL STANDARD ............................................................................................................ 2

IV. ARGUMENT ......................................................................................................................... 3

    A. The Schnell Declaration Should be Excluded as Unreliable and Irrelevant. ................ 3

        1. Schnell's Opinions Are Unreliable. ................................................................. 3

            i. Mr. Schnell does not explain how his experience allows him to arrive at his conclusions and his Declaration contains multiple errors. ................................................................................................ 3

            ii. The conclusions in the Schnell Declaration are not supported by any independent testing or analysis. ........................................................ 6

        2. The Schnell Declaration is Irrelevant. ............................................................. 9

    B. Alternatively, the Schnell Declaration Should be Stricken Under Rule 37(c)(1). ........... 11

V. CONCLUSION ................................................................................................................... 13

i

PLAINTIFF'S MOTION TO EXCLUDE OR, IN THE ALTERNATIVE, TO STRIKE EXPERT
DECLARATION OF RON SCHNELL
CASE NO. 4:22-04423-JST

**TABLE OF AUTHORITIES**

**Cases**

*AIG Ret. Servs., Inc. v. Altus Fin. S.A.*,
  2011 WL 13213589 (C.D. Cal. Sept. 26, 2011).................................................................4

*Armas v. Costco Wholesale Corp.*,
  2022 WL 17982239 (D. Nev. Nov. 30, 2022)...................................................................2

*Companhia Energetica Potiguar v. Caterpillar Inc.*,
  2016 WL 7507848 (S.D. Fla. Aug. 1, 2016).....................................................................8

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)..........................................................................................................1

*Eichenberger v. ESPN, Inc.*,
  876 F.3d 979 (9th Cir. 2017).............................................................................................9

*Emelianenko v. Affliction Clothing*,
  2011 WL 13176755 (C.D. Cal. July 28, 2011) ...............................................................11

*Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*,
  2018 WL 5793479 (N.D. Cal. Nov. 2, 2018)..................................................................10

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) .........................................................................................................9

*In re Incretin-Based Therapies Prod. Liab. Litig.*,
  524 F. Supp. 3d 1007 (S.D. Cal. 2021) ............................................................................7

*In re Packaged Seafood Prod. Antitrust Litig.*,
  2023 WL 8719454 (S.D. Cal. Dec. 18, 2023).................................................................10

*In re Rezulin Prod. Liab. Litig.*,
  369 F. Supp. 2d 398 (S.D.N.Y. 2005)..............................................................................6

*Krause v. Cnty. of Mohave*,
  459 F. Supp. 3d 1258 (D. Ariz. 2020)............................................................................10

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999)..........................................................................................................3

*Liaw v. United Airlines, Inc.*,
  2019 WL 6251204 (N.D. Cal. Nov. 22, 2019).................................................................9

*Lukov v. Schindler Elevator Corp.*,
  2012 WL 2428251 (N.D. Cal. June 26, 2012) .................................................................2

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
  209 F. Supp. 3d 612 (S.D.N.Y. 2016)..............................................................................9

*Maldonado v. Apple, Inc*,
  2021 WL 1947512 (N.D. Cal. May 14, 2021).................................................................9

*Martinez v. Cnty. of Alameda*,
  2024 WL 1117952 (N.D. Cal. Mar. 13, 2024)................................................................10

*Montera v. Premier Nutrition Corp.*,
  2022 WL 1225031 (N.D. Cal. Apr. 26, 2022) ............................................................................. 10

*Morningware, Inc. v. Hearthware Home Prod., Inc.*,
  2012 WL 3721350 (N.D. Ill. Aug. 27, 2012) ...................................................................... 12, 13

*OCG Energy, LLC v. Shen*,
  2024 WL 694912 (C.D. Cal. Feb. 12, 2024) ............................................................................. 10

*Pooshs v. Phillip Morris USA, Inc.*,
  287 F.R.D. 543 (N.D. Cal. 2012) .............................................................................................. 10

*Positive Techs., Inc. v. Sony Elecs., Inc.*,
  2013 WL 1402337 (N.D. Cal. Apr. 5, 2013) ............................................................................. 12

*Primiano v. Cook*,
  598 F.3d 558 (9th Cir. 2010) ................................................................................................. 4, 9

*Revolution Eyewear, Inc. v. Aspex Eyewear*, Inc.,
  2007 WL 6892109 (C.D. Cal. Apr. 30, 2007), *aff'd*, 563 F.3d 1358 (Fed. Cir. 2009) .................. 2, 11

*Rivera Martinez v. GEO Grp.*,
  2020 WL 2496064 (C.D. Cal. Jan. 23, 2020) .............................................................................. 2

*Rovid v. Graco Children's Prod. Inc.*,
  2018 WL 5906075 (N.D. Cal. Nov. 9, 2018) .............................................................................. 3

*Sims v. Metropolitan Life Ins. Co.*,
  2006 WL 3826716 (N.D. Cal. 2006) ......................................................................................... 12

*Siqueiros v. General Motors LLC*,
  2022 WL 74182 (N.D. Cal. Jan. 7, 2022) .................................................................................... 6

*Smiley v. Hologic, Inc.*,
  2016 WL 5242958 (S.D. Cal. Sept. 22, 2016) ........................................................................... 11

*Snyder v. Bank of Am., N.A.*,
  2020 WL 6462400 (N.D. Cal. Nov. 3, 2020) .............................................................................. 6

*United States v. Rodriguez*,
  125 F. Supp. 3d 1216 (D.N.M. 2015) ......................................................................................... 7

*Valdez v. Motyka*,
  2019 WL 4686605 (D. Colo. Sept. 26, 2019) ............................................................................. 7

*Walker v. Conagra Brands, Inc.*,
  2023 WL 8885148 (C.D. Cal. Sept. 21, 2023) ..................................................................... 6, 10

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) ............................................................................................ 2, 11

**Statutes**

18 U.S.C. § 2710(b)(1) ................................................................................................................. 10

Fed. R. Evid. 702 ............................................................................................................... 1, 2, 3, 4

PLAINTIFF'S MOTION TO EXCLUDE OR, IN THE ALTERNATIVE, TO STRIKE EXPERT
DECLARATION OF RON SCHNELL
CASE NO. 4:22-CV-04423-JST

**Rules**

Fed. R. Civ. P. 26 ................................................................................................................1, 12
Fed. R. Civ. P. 26(a) ...........................................................................................................11, 13
Fed. R. Civ. P. 26(a)(2) ....................................................................................................1, 2, 11
Fed. R. Civ. P. 26(a)(2)(B) ...................................................................................................1, 11
Fed. R. Civ. P. 26(a)(2)(B)(ii) ..................................................................................................11
Fed. R. Civ. P. 26(a)(2)(B)(iv) .................................................................................................11
Fed. R. Civ. P. 26(a)(2)(B)(v) ..................................................................................................11
Fed. R. Civ. P. 26(a)(2)(B)(vi) .................................................................................................11
Fed. R. Civ. P. 26(a)(2)(C) .......................................................................................................11
Fed. R. Civ. P. 30(b)(6) ..............................................................................................................9
Fed. R. Civ. P. 37 .....................................................................................................................13
Fed. R. Civ. P. 37(c)(1) ..................................................................................................2, 11, 13

iv

PLAINTIFF'S MOTION TO EXCLUDE OR, IN THE ALTERNATIVE, TO STRIKE EXPERT
DECLARATION OF RON SCHNELL
CASE NO. 4:22-CV-04423-JST

# NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on September 12, 2024, at 2:00 p.m., before the Honorable Jon S. Tigar of the United States District Court for the Northern District of California, Plaintiff Matthew Beke ("Plaintiff"), will and does hereby move the Court to exclude, or in the alternative strike, the Declaration of Ron Schnell in Support of Defendant Fandom, Inc.'s Motion for Summary Judgment.

This motion is based upon this Notice of Motion and Motion, the incorporated Memorandum of Law, the Declaration of Reid Gaa in Support of Plaintiff's Motion to Exclude or, in the Alternative, To Strike Expert Declaration of Ron Schnell ("Gaa Decl."), the evidence submitted in support of the motion, and any such other argument and evidence as may be presented to the Court.

Dated: August 9, 2024

By: /s/ Reid Gaa
Adam E. Polk (SBN 273000)
Simon Grille (SBN 294914)
Reid Gaa (SBN 330141)
Anthony Rogari (SBN 353784)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4800
apolk@girardsharp.com
sgrille@girardsharp.com
rgaa@girardsharp.com
arogari@girardsharp.com

*Attorneys for Plaintiff*

v

PLAINTIFF'S MOTION TO EXCLUDE OR, IN THE ALTERNATIVE, TO STRIKE EXPERT DECLARATION OF RON SCHNELL
CASE NO. 4:22-CV-04423-JST

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Court should exclude the Declaration of Ron Schnell in Support of Defendant Fandom, Inc.'s Motion for Summary Judgment (Dkt. 94-28, "Schnell Declaration" or the "Declaration") because it is both unreliable and irrelevant under Rule 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). He does not explain how his experience and background allow him to arrive at his conclusions. He performed no relevant testing of the Pixel on Fandom's website and reviewed the source code of pages on Fandom's website *after* the Pixel had been removed. Absent any testing or review of the relevant source code actually at issue in this case, Mr. Schnell, and Fandom by extension, effectively ask the Court to take his word for it, but any opinions merely supported by conclusory expert say-so are not sufficiently reliable.

Mr. Schnell's opinions are also unhelpful and irrelevant because they consist of legal conclusions, such as his opinions attempting to apply the Ninth Circuit's "ordinary person" standard under the Video Privacy Protection Act ("VPPA"). In addition, his opinions are laden with assertions that contradict testimony provided by the Rule 30(b)(6) deponent of nonparty Meta Platforms, Inc., even though Mr. Schnell cites that same testimony as a basis for his erroneous conclusions. And even when he accurately characterizes this testimony, Mr. Schnell merely relays information provided by another, more knowledgeable source. His Declaration therefore lacks adequate support, and resultingly does nothing to assist with the resolution of Fandom's motion for summary judgment.

Fandom also failed to comply with Rule 26 when it submitted the Declaration, omitting even the most basic disclosures required under Rule 26(a)(2)(B), including the facts and data Mr. Schnell relied upon in forming his opinions. This omission was not substantially justified because Mr. Schnell is Fandom's retained expert who has provided testimony in support of Fandom's motion for summary judgment, making him a testifying expert subject to the requirements of Rule 26(a)(2). In addition, despite numerous requests from Plaintiff's counsel to rectify these deficiencies, Fandom repeatedly refused, prejudicing Plaintiff by interfering with his counsel's ability to adequately prepare and fully examine Mr. Schnell regarding his opinions.

1

PLAINTIFF'S MOTION TO EXCLUDE OR, IN THE ALTERNATIVE, TO STRIKE EXPERT DECLARATION OF RON SCHNELL
CASE NO. 4:22-CV-04423-JST

Mr. Schnell's Declaration does not satisfy Rule 702 and *Daubert* and is procedurally defective. The Court should therefore exclude or, alternatively, strike it in its entirety.

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Should the Court exclude the Schnell Declaration under Rule 702 and *Daubert* because it is unreliable and would not assist the fact finder?

2. Should the Court strike the Schnell Declaration under Rule 37(c)(1) because Fandom failed to comply with the disclosure requirements of Rule 26(a)(2)?

## III. LEGAL STANDARD

"*Daubert* and Rule 702 broadly require that an expert not only be qualified, but also that the expert's testimony be reliable and relevant." *Lukov v. Schindler Elevator Corp.*, No. 5:11-CV-00201 EJD, 2012 WL 2428251, at *1 (N.D. Cal. June 26, 2012). Reliability means that the expert's testimony "has a reliable basis in the knowledge and experience of the relevant discipline" while relevancy means "the evidence . . . logically advances a material aspect of the party's case." *Armas v. Costco Wholesale Corp.*, No. 2:21-CV-01528-EJY, 2022 WL 17982239, at *3 (D. Nev. Nov. 30, 2022) (citation omitted). Expert testimony is admissible only if (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based upon sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. "The offering party must show by a preponderance of the evidence: (1) that the expert is qualified to render the opinion; and (2) that the opinion offered has adequate support." *Rivera Martinez v. GEO Grp.*, ED CV 18-1125-SP, 2020 WL 2496064, at *11 (C.D. Cal. Jan. 23, 2020).

In addition, a party's failure to comply with Rule 26(a)(2) "may result in exclusion of the evidence at trial or in connection with summary judgment proceedings." *Revolution Eyewear, Inc. v. Aspex Eyewear*, Inc., No. CV02-01087-MM-MCWx, 2007 WL 6892109, at *6 (C.D. Cal. Apr. 30, 2007), *aff'd*, 563 F.3d 1358 (Fed. Cir. 2009). "Rule 37(c)(1) gives teeth to [Rule 26's] requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Id.* (quoting *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)).

## IV. ARGUMENT

### A. The Schnell Declaration Should be Excluded as Unreliable and Irrelevant.

The Schnell Declaration should be excluded because the opinions contained in it do not satisfy Rule 702 and *Daubert* as they lack sufficient reliability and are not helpful to the Court.

#### 1. Schnell's Opinions Are Unreliable.

The reliability inquiry seeks to ensure that a testifying expert will "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). "[T]he requirement of reliability, or good grounds, extends to each step in an expert's analysis all the way through the step that connects the work of the expert to the particular case." *Rovid v. Graco Children's Prod. Inc.*, No. 17-CV-01506-PJH, 2018 WL 5906075, at *18 (N.D. Cal. Nov. 9, 2018) (citation omitted).

Mr. Schnell offers several erroneous or misleading conclusions in support of Fandom's summary judgment motion, each of which is addressed in more detail in the following section. First, he opines that for Facebook users who do not consent to off-Facebook activity, "the user's browser will instead send Facebook a c_user cookie with a separable ID (SID) value." Schnell Decl., ¶ 20b. Second, he states that "the Pixel code does not tell the user's browser to send Facebook the c_user cookie with the [F]ID, which is done based on the agreement between the user and Facebook." *Id.* ¶ 20a. Third, he misleadingly claims that the transmission of the "c_user cookie does not contain any video watch information" and that any connection between the c_user cookie and Pixel data is made by Facebook. *Id.* Each opinion lacks sufficient indicia of reliability because Mr. Schnell does not explain how he arrived at his conclusions (either based on his experience or through his own testing) and his declaration and deposition testimony demonstrate a lack of understanding of how the Pixel and Meta's systems actually work.

##### i. Mr. Schnell does not explain how his experience allows him to arrive at his conclusions and his Declaration contains multiple errors.

To the extent his opinions are based on his knowledge and experience, Mr. Schnell does not explain how his general experience in computer science allows him to draw specific conclusions about the functionality of the Pixel on Fandom's website. *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir.

3

PLAINTIFF'S MOTION TO EXCLUDE OR, IN THE ALTERNATIVE, TO STRIKE EXPERT
DECLARATION OF RON SCHNELL
CASE NO. 4:22-CV-04423-JST

2010). Mr. Schnell does not state "[1] how [his] experience leads to the conclusion reached, [2] why [his] experience is a sufficient basis for the opinion and [3] how [his] experience is reliably applied to the facts." *AIG Ret. Servs., Inc. v. Altus Fin. S.A.,* No. CV 05-1035-JFW (CWx), 2011 WL 13213589, at *2 (C.D. Cal. Sept. 26, 2011) (citing Fed. R. Evid. 702 advisory committee's note to 2000 amendments). Worse still, Mr. Schnell's Declaration contains basic mistakes reflecting a fundamental lack of understanding of how the Pixel operates. Mr. Schnell's opinions concerning the operation of the Meta Pixel and related data fields are unreliable and misleading because they are not founded on reliable sources, and instead (at best) ignore and (at worst) contradict evidence provided directly by Meta's corporate designee.

**Erroneous Opinion Regarding "c_user cookie."** With respect to Meta's "c_user cookie"[1] and its function within the Meta Pixel—core issues in the litigation and topics on which Fandom has focused its defenses—Mr. Schnell asserts that "the value of the cookie is either a Facebook user ID [('FID')][2] or a separable ID ('SID')" depending on whether the user has agreed to send Facebook information about his off-Facebook activity. Schnell Decl., ¶ 15; *see also id.* ¶ 20(b) ("[T]he user's browser will instead send Facebook a c_user cookie with a separate ID (SID) value"). ███████████ ███████████ *See* Gaa Decl., ███████████ ███████████. Nothing in the Schnell Declaration suggests his understanding of the c_user cookie is more accurate than Meta's.

Mr. Schnell is incorrect in asserting that the SID can ever be a value transmitted by the c_user cookie. Schnell Decl., ¶ 15. ███████████

---

[1] ███████████

[2] Mr. Schnell uses the acronym "UID" throughout his Declaration to refer to the Facebook user ID. For the sake of consistency with Plaintiff's opposition to Fandom's motion for summary judgment, filed concurrently herewith, Plaintiff uses the acronym "FID" to refer to the Facebook user ID.

4

PLAINTIFF'S MOTION TO EXCLUDE OR, IN THE ALTERNATIVE, TO STRIKE EXPERT
DECLARATION OF RON SCHNELL
CASE NO. 4:22-CV-04423-JST

1  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2  ▮▮▮▮▮▮▮▮▮▮ Shafiq Rpt., ¶ 28. Nothing in ▮▮▮▮▮▮▮▮▮ testimony or Exhibit 2 to Mr.

3  Schnell's Declaration indicates ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4  ▮▮▮▮▮▮▮▮

5        ***Erroneous Opinion Regarding Operation of Pixel.*** Mr. Schnell also states that it is not the

6  Pixel code that directs the user's browser to send the c_user cookie to Facebook, but rather the

7  agreement between the user and Facebook. Schnell Decl., ¶ 20(a). Yet again, this is incorrect. ▮

8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[3] Moreover, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19       Mr. Schnell is again wrong in opining that a Pixel transmission "would not contain a Facebook

20 user ID or any other information identifying a user." Schnell Decl., ¶ 20(a). ▮▮▮▮▮▮▮▮▮▮

21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23 ▮▮▮▮▮▮▮▮ Shafiq Rpt., ¶¶ 29, 36. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26

27 [3] A "network request" or "HTTP request" is the technical term for the transmission of information caused by Pixel. Shafiq Rpt., ¶ 17. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

██████████████████████████████████████████████████████████████████████████

"[A]ny theory that fails to explain information that otherwise would tend to cast doubt on that theory is inherently suspect." *In re Rezulin Prod. Liab. Litig.*, 369 F. Supp. 2d 398, 425 (S.D.N.Y. 2005). Mr. Schnell's Declaration is repeatedly at odds with ██████████████████████ without offering any explanation for the discrepancy. Together with the absence of any explanation for how he arrived at his conclusions based on his experience and knowledge, Mr. Schnell's repeated contradictions of Meta, and apparent lack of familiarity with the evidentiary record in this case, render his opinions unreliable.

### ii. The conclusions in the Schnell Declaration are not supported by any independent testing or analysis.

Mr. Schnell's opinions are also not based on sufficient facts or data or any reliable principles or methodologies. *See Siqueiros v. General Motors LLC*, No. 16-CV-07244-EMC, 2022 WL 74182, at *6 (N.D. Cal. Jan. 7, 2022) (noting that expert opinions must be "grounded in methods and procedures of science" instead of "the say so of the expert") (citation omitted). The Schnell Declaration does not reference any testing or independent analysis of the evidence relevant to cookies or the Meta Pixel that would support his opinions. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ The absence of any relevant testing or analysis means that his conclusions are unreliable. *See Walker v. Conagra Brands, Inc.*, No. 8:20-CV-01679-FWS-KES, 2023 WL 8885148, at *11 (C.D. Cal. Sept. 21, 2023) (excluding opinion where the expert "did not conduct an independent investigation of the underlying evidence").

And ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Ex. E (Fandom's Resp. to Pltf.'s Interrogs., Resp. No. 4). Mr. Schnell's decision to analyze only pages that would support his conclusion is thus the type of result-oriented analysis that has been repeatedly excluded. *See, e.g., Snyder v. Bank of Am., N.A.*, No. 15-CV-04228-KAW, 2020 WL 6462400, at *8 (N.D. Cal. Nov. 3, 2020) (excluding expert opinion that was based "on inadequate factual foundations

1  and problematic assumptions" where expert did not review evidence supporting the plaintiff's claims
2  and accepted incomplete information in reaching his conclusions); *In re Incretin-Based Therapies*
3  *Prod. Liab. Litig.*, 524 F. Supp. 3d 1007, 1041 (S.D. Cal. 2021) (expert's decision not to consider a
4  large body of relevant but potentially contrary data "only further casts doubt on the reliability").

5  **_Erroneous Opinions Regarding "c_user cookie" and Operation of Pixel._** Mr. Schnell's
6  discussion of the Meta Pixel and the information it transmits in particular suffer from a lack of
7  independent testing or analysis. This suggests he is merely parroting the arguments of counsel, which
8  "is not an appropriate use of expert testimony." *Valdez v. Motyka*, No. 15-CV-0109-WJM-STV, 2019
9  WL 4686605, at *6 (D. Colo. Sept. 26, 2019); *see United States v. Rodriguez*, 125 F. Supp. 3d 1216,
10 1252 (D.N.M. 2015) (expert should not be "effectively arguing the case as a mouthpiece for counsel").
11 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
12 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Instead,
13 the only support Mr. Schnell provides for these conclusions are self-serving diagrams, ▬▬▬▬
14 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬ that ostensibly show the transfer of information via the Meta Pixel
15 between Fandom, a user, and Meta. Schnell Decl., ¶¶ 20-21; ▬▬▬▬▬▬▬▬▬▬▬▬▬▬
16 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
17 ▬▬▬▬▬▬▬▬▬▬▬ Mr. Schnell then uses these graphics to make sweeping conclusions such
18 as, "the above diagram shows . . . the Pixel code does not tell the user's browser to send Facebook the
19 c_user cookie with the [FID], which is done based on the agreement between the user and Facebook"
20 and "[the] c_user cookie does not contain any video watch information." Schnell Decl., ¶ 20(a). But
21 nowhere does Mr. Schnell suggest that his diagrams, or the conclusions he draws from them, are the
22 product of any testing of the Fandom website, Fandom's Meta Pixel source code, or transmissions from
23 Fandom's Pixel itself. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
24 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
25 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Mr. Schnell's opinions
26 therefore appear to be based on nothing more than his own general overview of the sections of his
27 Declaration titled "Basics of the Web" and "Cookies" (Schnell Decl., ¶¶ 10-13) which are, again, not
28 specific to this litigation or the Pixel on Fandom's website. Simply put, neither the say so of Fandom's

1  counsel nor Mr. Schnell's general background offers a sufficient basis for his conclusions.

2  ***Erroneous Opinion Regarding the Contents of Pixel Transmissions.*** Mr. Schnell's analysis of Microdata is similarly unreliable and misleading given the corresponding time period of the documents he reviewed. *See* Schnell Decl., ¶¶ 25-26. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ In addition, Mr. Schnell does not explain the methodology he used to perform his Microdata analysis. This is a critical omission because the versions of these documents submitted in conjunction with Fandom's summary judgment motion contained production errors. These production errors cut off information on the page (*see* Grunwell Decl., Exs. 7-9 (Dkt. 94-22, 94-23, 94-24)), including the website code Mr. Schnell purportedly analyzed to formulate his opinions regarding Microdata. *See* Schnell Decl., ¶ 25.

███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Given Mr. Schnell's lack of an articulable methodology, and the lack of any discernable testing, there appears to be no basis for Mr. Schnell's Microdata-related opinions other than his say-so. Courts have recognized that it "is appropriate to strike testimony that merely relays observations rather than performing true expert analysis." *Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-CV-24277, 2016 WL 7507848, at *8 (S.D. Fla. Aug. 1, 2016) (finding expert's testimony would be unhelpful to the jury where the expert's analysis "provide[d] no explanation or connection to his purported root-cause analysis").

At bottom, without explaining either how his background or experience allows him to reach his conclusions or conducting any testing or analysis, there is simply "too great an analytical gap" between Mr. Schnell's conclusions and the underlying evidence. Opinions like Mr. Schnell's, which are based

on nothing more than an expert's *ipse dixit*, are not reliable and should be excluded. *See LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 641 (S.D.N.Y. 2016) ("[N]othing in either *Daubert* or the Federal Rules . . . requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.") (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 147 (1997)); *Domingo v. T.K.*, 289 F.3d 600, 606-07 (9th Cir. 2002) (upholding exclusion of expert testimony because it was attenuated from existing data); *Liaw v. United Airlines, Inc.*, No. C 19-00396 WHA, 2019 WL 6251204, at *4 (N.D. Cal. Nov. 22, 2019) (finding analytical gap between "the established facts in this case" and the expert's opinion).

### 2.      The Schnell Declaration is Irrelevant.

The Schnell Declaration should also be excluded because it is not helpful to the Court. Courts "must assure that the expert testimony . . . is relevant to the task at hand." *Primiano*, 598 F.3d at 564 (quotation omitted). Expert testimony is relevant if it "will assist the trier of fact to understand or determine a fact in issue." *Maldonado v. Apple, Inc*, No. 3:16-CV-04067-WHO, 2021 WL 1947512, at *2 (N.D. Cal. May 14, 2021) (citation omitted). The Schnell Declaration will not assist the Court in understanding the technical issues underlying Fandom's summary judgment motion because it contains legal conclusions and is redundant of testimony elicited during the deposition of Meta's Rule 30(b)(6) designee. Mr. Schnell offers no unique insight into cookies transmitted by Pixel, storage of Meta Pixel data, or the matching of Pixel event data with individual Facebook users. If anything, Mr. Schnell's Declaration only confuses matters for the Court because it contains broad statements regarding the functionality of the Pixel that are simply wrong or directly contrary to the testimony of Meta's software engineer, without any explanation.

Several of Mr. Schnell's opinions also fall outside the permissible scope of expert testimony. Mr. Schnell's opinions that "it is not possible for an ordinary person to correlate a user's SID with identifying information about the user" and that "[n]o identifying information is sent to Facebook from either the user or Fandom in this case" (Schnell Decl., ¶¶ 15b, 20b, 20c) constitute attempts to substitute his judgment for that of the fact finder because they directly touch on whether the information Fandom transmitted constitutes "personally identifiable information" under the applicable "ordinary person" standard. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017). "Such

opinions do not aid the trier of fact in making a decision, but, instead, attempt to substitute an expert's judgment for that of the [fact finder]." *Krause v. Cnty. of Mohave*, 459 F. Supp. 3d 1258, 1264 (D. Ariz. 2020). These opinions should therefore be excluded. *See Martinez v. Cnty. of Alameda*, No. 20-CV-06570-TSH, 2024 WL 1117952, at *1-2 (N.D. Cal. Mar. 13, 2024) (excluding legal conclusions from expert report).

The Schnell Declaration also improperly opines on Fandom's state of mind in again offering a legal conclusion. He claims that "Fandom would have no way of knowing whether Facebook can or does perform such a correlation" (Schnell Decl., ¶ 20a). Not only does this improperly provide ultimate opinion evidence as to whether Fandom's disclosures were made "knowingly" under 18 U.S.C. § 2710(b)(1), but "expert opinions on a party's state of mind are inadmissible[.]" *In re Packaged Seafood Prod. Antitrust Litig.*, No. 15-MD-2670 DMS(MSB), 2023 WL 8719454, at *3 (S.D. Cal. Dec. 18, 2023); *OCG Energy, LLC v. Shen*, No. 8:22-CV-01568-FWS-DFM, 2024 WL 694912, at *7 (C.D. Cal. Feb. 12, 2024) (excluding testimony about a corporation's state of mind).

At best, the Schnell Declaration amounts to a flawed recitation of testimony already elicited through Meta's deposition regarding Facebook cookies, the Meta Pixel, and internal Meta processes. *Cf. Walker v. Conagra Brands, Inc.*, 2023 WL 8885148, at *10 (C.D. Cal. Sept. 21, 2023) (excluding expert testimony where "substantial portions of [the expert's] report depend[ed] upon or merely summarize[d] the findings of other experts"); *Montera v. Premier Nutrition Corp.*, 2022 WL 1225031, at *6 (N.D. Cal. Apr. 26, 2022) (excluding expert opinion that had no basis beyond a similar opinion from another expert). The Schnell Declaration is therefore redundant of evidence already in the record, which the Court is more than capable of reviewing for itself. As such, the Schnell Declaration should be excluded as irrelevant because it fails to aid in the understanding or determining of any fact or issue in this litigation. *See Pooshs v. Phillip Morris USA, Inc.*, 287 F.R.D. 543, 547-48 (N.D. Cal. 2012) (excluding expert testimony where expert's "testimony 'interpreting' [the defendant's] documents would not assist the jury because those documents speak for themselves"); *Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*, No. 17-cv-00564-NC, 2018 WL 5793479, at *3 (N.D. Cal. Nov. 2, 2018) (excluding expert testimony as cumulative and speculative where sections of the expert report "simply summarize[d]" defendants' internal documents, which the court noted "speak for themselves").

**B.     Alternatively, the Schnell Declaration Should be Stricken Under Rule 37(c)(1).**

Rule 37(c)(1) provides that if a party fails to comply with the requirements of Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing or at a trial. . . ." The Schnell Declaration in support of Fandom's motion for summary judgment should be stricken under Rule 37(c)(1) because of Fandom's failure to comply with the disclosure requirements of Rule 26(a)(2)(B). In particular, the Schnell Declaration failed to include:

1.   All the facts and data relied upon by Mr. Schnell in forming his opinions (Rule 26(a)(2)(B)(ii));

2.   A list of Mr. Schnell's publications authored in the previous 10 years (Rule 26(a)(2)(B)(iv));

3.   Whether Exhibit 1 to the Schnell Declaration was a list of all the matters in which Mr. Schnell testified as an expert at trial or by deposition in the prior four years (Rule 26(a)(2)(B)(v)); and

4.   A statement of the compensation paid to Mr. Schnell for his testimony in this case (Rule 26(a)(2)(B)(vi)).

These requirements apply to expert testimony in support of summary judgment proceedings. *See, e.g.*, *Smiley v. Hologic, Inc.*, No. 16CV158-WQH-MDD, 2016 WL 5242958, at *2 (S.D. Cal. Sept. 22, 2016) (expert would be excluded from testifying "by declaration . . . or in connection with summary judgment proceedings under Rule 37(c)(1)" due to failure to comply with Rule 26(a)(2)); *Revolution Eyewear*, 2007 WL 6892109, at *7 (excluding expert testimony due to non-compliance with Rule 26(a)(2)(B) and (C) where it prejudiced the opposing party's ability to respond to a motion for summary judgment). Fandom refused to fully address these deficiencies until midway through Mr. Schnell's deposition and its failure was neither substantially justified nor harmless. *See Yeti*, 259 F.3d at 1106 (failure to comply with Rule 26(a) requires exclusion unless it was substantially justified or harmless); *Emelianenko v. Affliction Clothing,* No. 09-07865 MMM (MLGx), 2011 WL 13176755, at *3 (C.D. Cal. July 28, 2011) ("Under Rule 37, the burden of establishing substantial justification and harmlessness is on the party that failed to make the required disclosure.").

Mr. Schnell states in his Declaration that he was "retained by Defendant, [sic] Fandom, Inc., as an expert witness in this matter." Schnell Decl., ¶ 2. Plaintiff first advised Fandom of the deficiencies in the Schnell Declaration on July 19 and requested that Fandom correct them. Gaa Decl., ¶ 3. Plaintiff also noticed the deposition of Mr. Schnell and requested production of all discoverable material permitted by Rule 26. *Id.* ¶ 2. Despite numerous attempts to obtain the information omitted from Mr. Schnell's Declaration, Fandom argued that Mr. Schnell's Declaration was not an expert report and withheld the required disclosures until midway through Mr. Schnell's deposition. *Id.* ¶¶ 4-6. As courts in this District have held, however, a declaration submitted in support of summary judgment is a substitute for live testimony at trial. *See Positive Techs., Inc. v. Sony Elecs., Inc.*, No. 11-CV-2226 SI KAW, 2013 WL 1402337, at *2 (N.D. Cal. Apr. 5, 2013) ("Because Plaintiff filed Sobel's declaration during summary judgment proceedings, and the declaration is sworn testimony similar to testimony at trial, Plaintiff cannot now claim that Sobel is merely a consulting expert with respect to the subjects raised in his declaration."); *Sims v. Metropolitan Life Ins. Co.*, No. C–05–02980, 2006 WL 3826716 at *2 (N.D. Cal. 2006) ("[S]ubmitting sworn testimony is incompatible with retaining the status of a mere consulting expert immune from discovery."). Because Fandom relies on the Schnell Declaration in moving for summary judgment, Mr. Schnell is a testifying expert subject to the requirements of Rule 26 and Fandom's noncompliance lacked any justifiable basis. *See Morningware, Inc. v. Hearthware Home Prod., Inc.*, No. 09 C 4348, 2012 WL 3721350, at *6-7 (N.D. Ill. Aug. 27, 2012) ("Although Hearthware initially may have intended Mr. Nelems to serve only as a consulting expert, when Mr. Nelems submitted a sworn affidavit (i.e., testimony) to the Court in connection with its opposition to summary judgment and its cross-motion for summary judgment, Mr. Nelems became a testifying expert.").

Fandom's failure to timely produce the required information under Rule 26(a)(2) until during the middle of Mr. Schnell's deposition was prejudicial to Plaintiff, who had limited time to take Mr. Schnell's deposition before the August 9 deadline to oppose to Fandom's summary judgment motion. Without receiving the materials Mr. Schnell relied on for his Declaration prior to the deposition, Plaintiff's counsel was limited in their ability to examine the connection between the facts or data Mr. Schnell considered and the conclusions he drew from them. It was especially important that Plaintiff

have a full opportunity to do so because, as discussed in greater detail above, it is unclear how Mr. Schnell arrived at the conclusions in his Declaration.

Hindering the non-moving party's ability to examine the expert testimony underpinning a summary judgment motion is precisely the outcome Rule 37 is designed to prevent and the Court should accordingly strike the Schnell Declaration. *See* Fed. R. Civ. P. 37(c)(1); *see, e.g.*, *Morningware*, 2012 WL 3721350, at *7 (granting motion to strike expert report under Rule 37 for failure to comply with Rule 26(a)).

## V.   CONCLUSION

For the foregoing reasons, the Court should exclude or, in the alternative, strike the expert Declaration of Ron Schnell.

Dated: August 9, 2024

Respectfully submitted,

/s/  *Reid Gaa*
Adam E. Polk (SBN 273000)
Simon Grille (SBN 294914)
Reid Gaa (SBN 330141)
Anthony Rogari (SBN 353784)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
apolk@girardsharp.com
sgrille@girardsharp.com
rgaa@girardsharp.com
arogari@girardsharp.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record. I also certify that I caused the under seal documents to be served on counsel via electronic mail.

/s/  Reid Gaa
Reid Gaa