Adam E. Polk (SBN 273000)
Simon Grille (SBN 294914)
Reid Gaa (SBN 330141)
Anthony Rogari (SBN 353784)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
apolk@girardsharp.com
sgrille@girardsharp.com
rgaa@girardsharp.com
arogari@girardsharp.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| MATTHEW BEKE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FANDOM, INC.,<br><br>Defendant. | Case No.  4:22-cv-04423-JST<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION, AND MEMORANDUM OF LAW IN SUPPORT THEREOF**<br><br>Judge: Hon. Jon S. Tigar<br>Date:   January 16, 2025<br>Time: 2:00 p.m.<br>Courtroom: 6 – 2nd Floor |

**REDACTED - FILED UNDER SEAL**

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................................ vii

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1

I.      INTRODUCTION ...................................................................................................... 1

II.     STATEMENT OF THE ISSUE TO BE DECIDED .................................................. 2

III.    STATEMENT OF FACTS .......................................................................................... 2

        A.      Fandom's Website and Business Model Are Focused on Video Content. ....................... 2

        B.      Fandom Installed the Meta Pixel For Purposes of Disclosing Information About Its Users to Meta. ................................................................................................................. 3

        C.      The Information Fandom's Pixel Transmitted to Meta Constitutes Personally Identifying Information. .................................................................................................... 4

        D.      The Claims in this Case Can be Adjudicated with Common Evidence. ......................... 8

        E.      Whether Fandom's Disclosures Were Authorized Under the VPPA Can Be Answered at Once for the Entire Class. ......................................................................... 11

IV.     LEGAL STANDARD ................................................................................................. 11

V.      ARGUMENT ............................................................................................................. 11

        A.      The Requirements of Rule 23(a) Are Met. ................................................................... 12

                1.      The Class is Sufficiently Numerous. ................................................................ 12

                2.      Commonality is Satisfied. ................................................................................. 13

                3.      Plaintiff's VPPA Claim is Typical of the Claims of Other Class Members. ...... 14

                4.      Plaintiff and His Counsel Will Adequately Represent the Class. ...................... 14

        B.      Common Issues Predominate Regarding Fandom's VPPA Violations. ......................... 16

                1.      Fandom's VPPA Liability Can Be Determined on a Classwide Basis. .............. 16

                2.      Calculating Damages Will Be Straightforward Because the VPPA Provides for Statutory Damages. ....................................................................................... 19

        C.      A Single Class Proceeding is Superior to Individual Adjudication. ............................... 20

        D.      The Class Can Also Be Certified as to Key Liability Issues Under Rule 23(c)(4). ......... 21

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
Case No. 4:22-cv-04423-JST

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

VI.    CONCLUSION ............................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*A.B. v. Hawaii State Dep't of Educ.*,
    30 F.4th 828 (9th Cir. 2022) ...................................................................................13

*Ade v. Viki, Inc.*,
    2024 WL 1880153 (N.D. Cal. Mar. 28, 2024) ..........................................................17

*Akaosugi v. Benihana Nat'l Corp.*,
    282 F.R.D. 241 (N.D. Cal. 2012) ..............................................................................12

*Alcazar v. Fashion Nova, Inc.*,
    2022 WL 19975445 (N.D. Cal. Sept. 6, 2022) .....................................................16, 20

*Aldana v. GameStop, Inc.*,
    2024 WL 708589 (S.D.N.Y. Feb. 21, 2024) .............................................................17

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013) ...................................................................................................11

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) ..............................................................................12, 21

*Brooks v. Thomson Reuters Corp.*,
    2023 WL 9316647 (N.D. Cal. Aug. 10, 2023) ..........................................................16

*Brown v. Google, LLC*,
    2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) .....................................................13, 14

*Cai v. CMB Exp. LLC*,
    2024 WL 2334509 (C.D. Cal. Apr. 4, 2024) .............................................................21

*Castro v. ABM Indus., Inc.*,
    325 F.R.D. 332 (N.D. Cal. 2018) ..............................................................................15

*Chinitz v. Intero Real Est. Servs.*,
    2020 WL 7391299 (N.D. Cal. July 22, 2020) ...........................................................13

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
    2022 WL 1459567 (N.D. Cal. May 9, 2022) .............................................................15

*Coulter-Owens v. Time, Inc.*,
    308 F.R.D. 524 (E.D. Mich. 2015) .....................................................................14, 16, 20

*Doe v. Mindgeek USA Inc.*,
    702 F. Supp. 3d 937 (C.D. Cal. 2023) ......................................................................20

*DZ Rsrv. v. Meta Platforms, Inc.*,
    96 F.4th 1223 (9th Cir. 2024) ...................................................................................16

*Gold v. Midland Credit Mgmt., Inc.*,
    306 F.R.D. 623 (N.D. Cal. 2014) ..............................................................................19

*Hall v. Marriott Int'l, Inc.*,
   2024 WL 3367518 (S.D. Cal. July 10, 2024) .................................................21

*Haney v. Recall Ctr.*,
   282 F.R.D. 436 (W.D. Ark. 2012) ..............................................................16

*Harris v. comScore, Inc.*,
   292 F.R.D. 579 (N.D. Ill. 2013) .................................................................16

*Hodges v. Akeena Solar, Inc.*,
   274 F.R.D. 259 (N.D. Cal. 2011) ...............................................................14

*Immigrant Defs. L. Ctr. v. Mayorkas*,
   2023 WL 3149243 (C.D. Cal. Mar. 15, 2023) ..........................................14

*In re Arris Cable Modem Consumer Litig.*,
   327 F.R.D. 334 (N.D. Cal. 2018) ...............................................................21

*In re Facebook Biometric Info. Priv. Litig.*,
   326 F.R.D. 535 (N.D. Cal. 2018) ...............................................................16

*In re Hulu Priv. Litig.*,
   2013 WL 6773794 (N.D. Cal. Dec. 20, 2013) ..........................................19

*In re Intuitive Surgical Sec. Litig.*,
   2016 WL 7425926 (N.D. Cal. Dec. 22, 2016) ..........................................15

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*,
   609 F. Supp. 3d 942 (N.D. Cal. 2022) ......................................................15

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
   2023 WL 1813530 (C.D. Cal. Feb. 7, 2023) ............................................20

*In re PFA Ins. Mktg. Litig.*,
   2021 WL 5994908 (N.D. Cal. Nov. 3, 2021) ...........................................15

*In re Vizio, Inc., Consumer Priv. Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) ....................................................17

*In re Yahoo Mail Litig.*,
   308 F.R.D. 577 (N.D. Cal. 2015) ...............................................................13

*Lytle v. Nutramax Lab'ys, Inc.*,
   99 F.4th 557 (9th Cir. 2024) .......................................................................19

*Martinez v. Blu Prod., Inc.*,
   2019 WL 12838199 (C.D. Cal. Oct. 3, 2019) ..........................................14

*Melvin v. Sequencing, LLC*
   344 F.R.D. 231 (N.D. Ill. 2023) .................................................................16

*Mollett v. Netflix, Inc.*,
   795 F.3d 1062 (9th Cir. 2015) ....................................................................16

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) ...............................................................11, 16

*Opperman v. Path, Inc.*,
   2016 WL 3844326 (N.D. Cal. July 15, 2016)·············································13

*Rodriguez v. Google LLC*,
   2024 WL 38302 (N.D. Cal. Jan. 3, 2024) ············································16

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) ························································14

*Romero v. Securus Techs., Inc.*,
   331 F.R.D. 391 (S.D. Cal. 2018) ·····················································20

*Sandoval v. Cnty. of Sonoma*,
   2015 WL 1926269 (N.D. Cal. Apr. 27, 2015) ·······································12

*Scholl v. Mnuchin*,
   489 F. Supp. 3d 1008 (N.D. Cal. 2020) ·········································14, 15

*Smith v. City of Oakland*,
   339 F.R.D. 131 (N.D. Cal. 2021) ·····················································12

*Smith v. Pathway Fin. Mgmt., Inc.*,
   2012 WL 12884448 (C.D. Cal. Nov. 26, 2012) ····································21

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ·························································15

*Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*,
   2014 WL 4627271 (C.D. Cal. Sept. 8, 2014)······································20

*Svoboda v. Amazon.com, Inc.*,
   2024 WL 1363718 (N.D. Ill. Mar. 30, 2024)······································17

*Tapia-Rendon v. United Tape & Finishing Co.*,
   2023 WL 5228178 (N.D. Ill. Aug. 15, 2023) ·······································21

*Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016) ························································12

*United Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co.*,
   593 F.3d 802 (9th Cir. 2010) ·························································11

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ·························································21

*Vaquero v. Ashley Furniture Industries, Inc.*,
   824 F.3d 1150 (9th Cir. 2016) ························································19

*Vizcarra v. Unilever United States, Inc.*,
   2023 WL 2364736 (N.D. Cal. Feb. 24, 2023) ·····································20

*Walker v. Life Ins. Co. of the Sw.*,
   953 F.3d 624 (9th Cir. 2020) ·························································11

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)·····································································13

*West v. California Servs. Bureau, Inc.*,
    323 F.R.D. 295 (N.D. Cal. 2017)................................................................13

*Wilcox v. Swapp*,
    330 F.R.D. 584 (E.D. Wash. 2019)...............................................16, 18, 19

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010).................................................................20

*Wortman v. Air New Zealand*,
    326 F.R.D. 549 (N.D. Cal. 2018).............................................................12

**Statutes**

18 U.S.C. § 2710 .............................................................................................1

18 U.S.C. § 2710(b)(1)(D).............................................................................17

18 U.S.C. § 2710(b)(2) ..................................................................................11

18 U.S.C. § 2710(c)(2) ..................................................................................19

18 U.S.C. § 2710(c)(2)(A)..............................................................................19

**Rules**

Fed. R. Civ. P. 23(a) ........................................................... vii, 1, 2, 12

Fed. R. Civ. P. 23(a)(1)..................................................................................12

Fed. R. Civ. P. 23(a)(4)..................................................................................15

Fed. R. Civ. P. 23(b)(3) ......................................................................... *passim*

Fed. R. Civ. P. 23(c)(4) ......................................................................... *passim*

Fed. R. Civ. P. 23(g) ......................................................................................15

Fed. R. Civ. P. 30(b)(6)..................................................................................18

### NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on January 16, 2025 at 2:00 p.m., before the Honorable Jon S. Tigar of the United States District Court for the Northern District of California, Plaintiff Matthew Beke ("Plaintiff"), will and does hereby move the Court, pursuant to Rules 23(a) and (b)(3) or, alternatively, (c)(4) of the Federal Rules of Civil Procedure, for an order certifying a Class of all persons in the United States who had an account with Fandom.com and requested or obtained video content on Fandom.com while logged into their Facebook account on the same browser between June 19, 2021 and November 10, 2023. Excluded from the Class are Defendant Fandom, its parents, subsidiaries, affiliates, officers and directors; any entity in which Fandom has a controlling interest; governmental entities; and all judges assigned to hear any aspect of this litigation, as well as their staff and immediate family members.

This motion is based upon this Notice of Motion and Motion, the incorporated Memorandum of Law, the Declaration of Simon S. Grille ("Grille Decl."), the Declaration of Plaintiff Beke ("Beke Decl."), the Expert Report of Dr. Zubair Shafiq ("Shafiq Rpt."), the Proposed Trial Plan, the evidence submitted in support of the motion, any additional evidence submitted on reply, and any further argument presented to the Court.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
Case No. 4:22-cv-04423-JST

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

This privacy class action arises from Defendant Fandom's disclosure of the specific video materials that its subscribers requested or obtained from its website without obtaining the requisite consent under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. Plaintiff is a Fandom subscriber. He alleges that Fandom disclosed his video viewing history to Meta Platforms Inc. without his consent in violation of the VPPA. He moves to certify a Class of similarly situated Fandom subscribers, and discovery from both Fandom and Meta demonstrates that the VPPA claims here are well-suited for class treatment.[1] The requirements of Rule 23(a) are met because the Class includes at least thousands of Fandom subscribers, and their VPPA claims turn on common questions, including the basic question of whether Fandom made disclosures prohibited by the VPPA using a digital advertising tool called the Meta Pixel. Plaintiff's VPPA claim is typical of the Class because, like all Class members, he provided personal information to register an account with Fandom and alleges that Fandom disclosed his private information to Meta without lawful consent. Plaintiff has also demonstrated that he will fairly and adequately represent the interests of the Class, and he has retained counsel experienced in privacy and VPPA litigation.

The requirements of Rule 23(b)(3) also are satisfied. Common issues predominate because each element necessary to establish Fandom's VPPA liability can be determined—up or down—using common evidence. First, Fandom's status as a "video tape service provider" will be the same for the entire Class, relying on evidence that Fandom ███████████████████████████████ ██████████████████████ Similarly, whether Fandom disclosed "personally identifiable information" to Meta will not vary between Class members. The source code for Fandom's website shows that it configured the Meta Pixel JavaScript to send Meta information revealing the videos accessed by its users, along with personally identifying Facebook User IDs. Whether the information Fandom configured its Pixel to transmit is protected by the VPPA will therefore be answered for (or against) Plaintiff and the Class in one stroke. The question of whether Fandom's disclosures were made knowingly will also be answered for all Class members using common evidence. Fandom implemented the Pixel to disclose subscriber information to Meta and coded its website to identify video content in a format that would be readable by

---

[1] Plaintiff does not move to certify his unjust enrichment claim.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
Case No. 4:22-cv-04423-JST

1    Meta or any ordinary person. ████████████████████████████████████████████

2    ██████████████████████████████████████████████.[2] Last, because the VPPA

3    provides for statutory damages, determining class-wide damages will be relatively straightforward and will

4    not present individualized issues.

5           A class proceeding is also the superior method of resolving this dispute. The potential statutory

6    recovery for any Class member pales in comparison to the difficulty and costs of litigating the technical

7    issues related to the Pixel. As set forth in Plaintiff's proposed trial plan, a class trial will also be

8    manageable because the elements of Fandom's liability can be determined once, using common evidence.

9    The evidentiary record demonstrates, moreover, that Class membership can be readily verified using Pixel

10   transmission data from Meta and Fandom's records of its registered users.

11          The requirements of Rule 23(a) and (b)(3) or, alternatively, Rule 23(c)(4)[3] are met and class

12   certification should be granted.

13   **II.     STATEMENT OF THE ISSUE TO BE DECIDED**

14          Should the Class be certified under Rule 23(a) and (b)(3) or, alternatively, Rule 23(c)(4) with

15   respect to Plaintiff's VPPA claim?

16   **III.    STATEMENT OF FACTS**

17          **A.     Fandom's Website and Business Model Are Focused on Video Content.**

18          Fandom is a website that hosts ███████████████████████████████████████

19   ████████████████████████████████████████████████████████████████

20   Fandom provides consumers that visit its website access to pre-recorded videos. Fandom videos fall into

21   two categories: █████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████████

23   ███████████████████████████████████████████

24

25

26   [2] All "Ex." cites are to exhibits attached to the Grille declaration unless otherwise noted.

27   [3] While Plaintiff maintains that certification under Rule 23(a) and (b)(3) is appropriate, in the alternative, certification under Rule 23(c)(4) is appropriate as resolution of key liability issues such as

28   whether Fandom is a "video tape service provider" or whether Fandom's disclosures to Meta were made "knowingly" will materially advance the resolution of this case.

2

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
Case No. 4:22-cv-04423-JST

1   ████████████████████████████████████████████████████████████████████

2   ███████████████████████████████████████████████████████████

3   Fandom primarily generates revenue ███████████████████████████████

4   ████  Video content is integral to Fandom's business and is responsible for driving a substantial

5   amount of traffic to Fandom's website and thus revenue for Fandom. █████████████████████

6   ██████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████████████

9   █████████████████████████ Fandom promotes the reach of its video content to advertisers and

10  sells "pre-roll" ads designed to play prior to the initiation of video content. *See* ████████████

11  █████████████████; Ex. 5 (Fandom's Responses to Pltf.'s Requests for Admission, Resp. Nos. 8,

12  9); ████████████████████████████████████ Fandom's ads,

13  including pre-roll ads, ███████████████████████████████████████████

14  ██████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████

16  ██████████████████████████

### B.  Fandom Installed the Meta Pixel For Purposes of Disclosing Information About Its Users to Meta.

Fandom implemented the Meta Pixel code on its website in May 2020, and the Pixel remained on Fandom's website ████████████████ Ex. 9 (Fandom's Response to Pltf.'s Interrogs., Resp. No. 4); ███████████████████ Fandom first installed the Pixel in connection with its contract with Permutive, a digital advertising vendor focused on audience creation and data management. Ex. 9 (Resp. No. 4). This Pixel remained active on Fandom's website until January 2023. *Id.* Fandom installed a second Meta Pixel on its website in July 2020 in connection with its contract with Audigent, a different audience creation and data management company, and that Pixel remained on Fandom's website ████ ██████████████ *Id.*; ███████████████████████████████████

Fandom programmed its website with the "Meta Pixel" to disclose information about its users to Meta, and, in turn, to optimize—i.e. better target—delivery of paid advertisements. Ex. 9 (Resp. No. 4). ████████████████████████████████████████████████████

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
Case No. 4:22-cv-04423-JST

[REDACTED]

**C.    The Information Fandom's Pixel Transmitted to Meta Constitutes Personally Identifying Information.**

Fandom programmed its Pixel to send Meta information that both identifies individual Fandom users and reveals specific video content, including URLs identifying Fandom webpages with videos, as well as metadata and button click data corresponding to the videos on those webpages.

The Pixel transmits to Meta cookies [REDACTED] Shafiq Rpt. ¶¶ 37, 41-42, 56. Cookies are "small pieces of text" that are "used to store and receive identifiers and other information on computers, phones and other devices." Ex. 18. The Pixel "relies on Facebook cookies, which enable [Meta] to match your website visitors to their respective Facebook User accounts." Ex. 19. Fandom configured its Pixel to disclose the Facebook User ID of its website visitors through a cookie called "c_user." As Amlesh Jayakumar (Meta's software engineer) explained, [REDACTED] Each Facebook User ID is associated with a Facebook profile that identifies the owner of that profile. Ex. 20 (https://www.facebook.com/help/211813265517027). Anyone who possesses a Facebook User ID may use this number to quickly and easily locate, access, and view the corresponding Facebook profile by simply visiting www.facebook.com/[Facebook ID]. On top of the c_user cookie, the Pixel transmits a variety of other identifiers along with Pixel event data including the "fr_cookie," a Facebook cookie [REDACTED]

1   ██████████████████████████████████████████████ Shafiq Rpt. ¶ 40-41; ████████████

2   ██████████████████████

3        As to video materials, the Pixel sends Meta information about the pages a Fandom user visits on

4   Fandom's website and the videos on those pages. *See* Ex. 21; Ex. 22; Shafiq Rpt. ¶¶ 43-55. ███████

5   ████████████████████████████████████████████ Fandom programmed its

6   Pixel to transmit to Meta a "PageView" event that shares with Meta the URL of a page visited by a

7   Fandom user, including URLs that link to specific pre-recorded video content. *Id.* at 43:14-44:5, 47:1-

8   48:1; Ex. 19; Shafiq Rpt. ¶ 43-44. Fandom also configured its Pixel to transmit a "Microdata" event. ███

9   ███████████████████████████ Shafiq Rpt. ¶ 45-47. The Microdata event sends metadata

10  corresponding to the content on the page, including information that identifies specific pre-recorded

11  videos on Fandom's website. ██████████████████████████████████████████

12  Shafiq Rpt. ¶¶ 27-34, 48-51. Last, Fandom programmed its Pixel to transmit "button click" information

13  to Meta, which includes data indicating that a Fandom user clicked "play" on a particular video. Shafiq

14  Rpt. ¶¶ 52-55. The Pixel sends both the events and Facebook User IDs in the same transmission. ███

15  ████████████████████████████████████████████

16       Plaintiff's expert, Professor Zubair Shafiq, analyzed the source code of Fandom's website to

17  assess the disclosures made by Fandom through its use of the Pixel. When the Pixel is active on a

18  webpage, its transmissions can be observed by examining the network traffic—electronic

19  transmissions—between the website and Meta. Shafiq Rpt. ¶ 36. A web developer can also identify the

20  information the Pixel is configured to send to Meta by reviewing the Meta Pixel source code installed on

21  the website. Shafiq Rpt. ¶¶ 16-26, 36, 38, 46-47, 49, 52-53. Professor Shafiq examined the Meta Pixel

22  source code and the network transmissions between Fandom and Meta using archived versions of

23  Fandom webpages from the class period. For example, the Fandom webpage

24  ██████████████████████████████ which contains information about the ██████████████

25  ████████████ contains a video titled ██████████████████████████████████████

26  ████████████████████████████████████████████████████████████

27  ██████████████████████████████

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
Case No. 4:22-cv-04423-JST

1       Figure 1, below, shows the network transmissions between Fandom and Meta upon navigating to

2   the ▉▉▉▉▉ webpage as it existed in November 2022. The image shows that Fandom's Pixel

3   transmitted the URL of the ▉▉▉▉▉ page to Meta, along with information identifying the video on

4   the page, including the video title and a description of the video. The column on the left shows that

5   electronic transmissions are being sent to Meta from Fandom via the two Meta Pixels installed on

6   Fandom's website (Pixel ID: 1610279972484026 and Pixel ID 1853083501571805). The right column

7   identifies the categories and contents of those transmissions. For instance, the "id" row sends the unique

8   "Pixel ID" corresponding to the Pixel that Fandom implemented in May 2020. The row labeled "ev"

9   indicates transmission of a "Microdata" event and the "dl" row shows the transmission of the page URL.

10  The rows labeled "cd[Meta]", "cd[OpenGraph]," and "cd[Schema.org]" show transmission of metadata

11  to Meta. This metadata includes the page title ▉▉▉▉▉▉ and page description shown in the

12  "cd[OpenGraph]" section, as well as the title of the video on the page ▉▉▉▉▉▉▉▉

13  the video's duration ▉▉▉▉▉ a description of the video, and other information identifying the

14  video in the "cd[Schema.org]" section (highlighted in blue). Shafiq Rpt. ¶ 48, fig. 13.



15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
Case No. 4:22-cv-04423-JST

Fandom configured its Pixel to automatically transmit the Microdata event shown in Figure 1 each time the Pixel activates. ███████████████████████████ Shafiq Rpt. ¶¶ 37, 45-47. The Microdata event sends "page metadata . . . from your website to improve your ads delivery and measurement." Ex. 25. This metadata is "used to indicate key information about the items on your website, such as names, descriptions, and prices." *Id.*; Shafiq Rpt. ¶ 28.

███████████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████████
██████ Fandom, moreover, configured its Pixel to send this information to Meta through the Microdata event. Shafiq Rpt. ¶¶ 49-51.

The Pixel Fandom installed transmitted at least three types of metadata corresponding to the video(s) on the page as well "button click" data indicating that a Fandom website visitor pressed "play" on a video. First, all of Fandom's pages are marked with metadata that identifies the URL of the page, which is transmitted to Meta via the Microdata event. Shafiq ¶¶ 29-31, 48, 50-51. The URL, in the "dl" row of Figure 1, reveals the specific video content on the page ████████████████ and includes the key words from the video's title. Anyone in receipt of the URL can identify the specific video associated with that page both from the key words in the URL and by pasting the URL into any web browser.[4]

Second, every Fandom webpage includes metadata fields pertaining to the content on the page, including the title of the page, description of the page, and other information, which is also shared with Meta through the Microdata event. Shafiq Rpt. ¶ 29-31, 48, 50-51. The title and description fields identify the video content on that page. As shown in the "cd[Meta]" and "cd[OpenGraph]" rows in Figure 1, the page title of the ████████████████████ and the video's title is substantively identical: ████████████████████

---

[4] Fandom began removing featured videos in early 2022. Ex. 27. Archived versions of Fandom's website (such as https://web.archive.org/web/20221124214440/https://seinfeld.fandom.com/wiki/Susan_Ross), however, show they would have been visible to a user who accessed these pages while the Pixel was active on Fandom's website. Shafiq Rpt. ¶¶ 22-23, 30, fig. 6.

7

Third, Fandom pages include metadata specific to Featured Videos—including the name of the video, a description of the video, and other information—that is transmitted to Meta through the Microdata event. Shafiq Rpt. ¶ 30-31, 48, 51. For example, Figure 1 shows the transmission of the exact title ████████████████, duration ██████████████, and description ██████████ ███████████████████████ of the video in the "cd[Schema.org]" metadata. The "cd[Schema.org]" transmission also labels the content as a video and identifies Fandom's video player ("jwplayer").

Fourth, Fandom also configured its Pixel so that Meta would receive data indicating that a person clicked play on Fandom's video player and the URL of the page with the video where that person clicked play. *See, e.g.*, ████████████████████████████; Shafiq Rpt. ¶¶ 52-55.

Besides these four types of data, when a user accessed a page on Fandom's website with video content, Fandom's Pixel also transmitted the URL of that page through the "PageView" event. *See* Shafiq Rpt. ¶¶ 43-44; ███████████████████████████████ ████████████████ As discussed above, the URL identifies specific video content because it includes key words identifying the title and the subject matter of the video and because a person could identify the video by simply pasting the URL into their browser.

In summary, Fandom programmed its website and its Meta Pixel to transmit to Meta (1) data that identifies the Facebook user, including the Facebook User ID sent through the c_user cookie, (2) the URL of a webpage a user visited through the "PageView" event, and (3) information identifying video content on that webpage through the "Microdata" event and button click data.

### D.     The Claims in this Case Can be Adjudicated with Common Evidence.

Whether Fandom transmitted a Class member's video choices and Facebook User ID to Meta can be determined via common evidence. Meta has records of ███████████████████ ██████████████████████████████████████████████████ ████████████████████████ Meta also has retained certain records of ██████████████████ ████████████████████████████████████ Fandom maintains records of its registered users. ██████████████████ *see also* Ex. 5 (Fandom's Response to Pltf.'s Reqs. for Admis., Resp. No. 38). Fandom also maintains records ████████████████

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
Case No. 4:22-cv-04423-JST

1  ████████ which can be used to filter Meta's records to identify instances where Fandom transmitted

2  a Class member's video choices to Meta. ████████████████████████████████████████

3  ████████████████████████████████████████████ Ex. 37; Shafiq Rpt.

4  ¶¶ 58-68. As Plaintiff's experience demonstrates, when taken together, this classwide evidence will

5  resolve the core factual and legal questions in this case.

6      As with other Class members, whether Plaintiff Beke has a VPPA claim can be determined using

7  Meta and Fandom's records. He registered for an account with Fandom on June 2, 2022, providing his

8  personal information in the process. Ex. 24 (Beke Dep. Tr. at 79:4-10, 82:9-83:22); ████

9  ████████████ A few days later on ██████, Plaintiff Beke accessed the ██████████ wiki on

10 Fandom's website—available at ██████████████████████████████████

11 ███████████████████████████████████████████████████████

12 ██████████████████████████████████ Fandom's records confirm that the

13 page contains a video with that name. Ex. 37. Similarly, on ██████████████ Plaintiff Beke accessed

14 the ██████████ wiki on Fandom's website—available at

15 ██████████████████████████████—and ████████████████████████

16 █████████████████████████████████████████████████████████

17 ████████████████████ Fandom's records confirm that ██████████████████████

18 ███████████████████████████████████████

19     Meta's records ██████████████████████████████████████

20 ██████████████████████████████████████

21 ████████████████████████ Meta maintains records ████████████████████████

22 ███████████████████████████████████████████████████

23 ███████████████████████████████████

24     Meta's records show ████████████████████████████████████████

25 ██████████████████████████████████████

26 ███████████████████████████████████████████████

27 █████████████████████████████████████████████████████

28 ██████████████████████████████████████████

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
Case No. 4:22-cv-04423-JST

1  ███████████████████████████████████████████████████

2  ███████████████.[5] Shafiq Rpt. ¶ 60;

3  ███████  In each case, the Microdata event included, at a minimum, the page title ███████

4  ██████████  which is substantially identical to the video title ("███████████████

5  ████████████████████

6        ██████████████████████████████████████

7  ████████████████████████████████████████████

8  Meta's software engineer, Amlesh Jayakumar, testified that ██████████████████

9  ████████████████████████████████████████████████

10 ████████████████████████████████████████████

11 ████████████████████████████████████████████

12 Meta's records support ███████████████████████████████

13 ████████████████████████████████████████

14 ████████████████████████████████████████

15 ███████████████  Meta's records also confirm that ██████████████████████

16 ████████████████████████████████████████████████

17 ███████████████████████████████████

18 ██████████████████████████████

19        As shown by Mr. Beke's experience, Fandom and Meta's records can be used in combination to

20 identify instances where Fandom's Pixel transmitted information identifying (1) a Fandom user who is

21 logged into their Facebook account with (2) the specific video content that person requested or obtained

22 on Fandom's website. ████████████████████████████████  Shafiq Rpt. ¶¶ 58-68.

---

[5] Meta also maintains ████████████████████████████████████████
██████████████████  While these records are not necessary to identify class members, they
provide another source of common evidence that Fandom transmitted users' video choices and
Facebook User IDs to Meta.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
Case No. 4:22-cv-04423-JST

### E.    Whether Fandom's Disclosures Were Authorized Under the VPPA Can Be Answered at Once for the Entire Class.

The VPPA provides that a video tape service provider may disclose personally identifiable information concerning a consumer if the consumer provides "informed written consent (including through an electronic means using the Internet) . . . in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C. § 2710(b)(2). When a user signs up for a Fandom account, Fandom presents the user with its Terms of Use and Privacy Policy. ████████ ████████████████████ Fandom has produced ████████████████████████████ ████████████████—evidence common to the class—which show █████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████

## IV.   LEGAL STANDARD

"A plaintiff pursuing class certification must satisfy each prerequisite of Rule 23(a) and establish an appropriate ground for maintaining the class action under Rule 23(b)." *Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 630 (9th Cir. 2020). At class certification, "the question is not whether the . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met[.]" *United Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010) (citation omitted). As such, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). A district court lacks "license to engage in free-ranging merits inquiries at the certification stage" and "cannot decline certification merely because it considers plaintiffs' evidence relating to the common question to be unpersuasive and unlikely to succeed in carrying the plaintiffs' burden of proof on that issue." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 667 (9th Cir. 2022) (en banc).

## V.   ARGUMENT

Plaintiff moves to certify a Class of all persons in the United States who had an account with Fandom.com and requested or obtained video content on Fandom.com while logged into their Facebook

1   account on the same browser between June 19, 2021 and November 10, 2023.[6] As this Court has

2   explained, a proposed class definition need only be "clear and objective." *Smith v. City of Oakland*, 339

3   F.R.D. 131, 137 (N.D. Cal. 2021) (Tigar, J.) (citing *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121,

4   1133 (9th Cir. 2017)); *see Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136-37 (9th Cir. 2016).

5        The Class here is defined based on not only objective, but also verifiable criteria using Fandom

6   and Meta's records. *See Wortman v. Air New Zealand*, 326 F.R.D. 549, 555 (N.D. Cal. 2018) (class was

7   sufficiently defined because membership "can be established by means of objective, verifiable criteria").

8   Specifically, Meta has ███████████████████████████████████████

9   ████████████████████████████████████████████████████████████ As

10   Professor Shafiq explains, these records ███████████████████████████████

11   ██████████████████████████████████████████████ Meta's

12   records also ███████████████████████████████████████████████

13   ███████████████████████████████ And Meta's records ███████████

14   ████████████████████████████████ Finally, the list of Class members

15   identified from Meta's records can be cross-checked with Fandom's records to identify the names and

16   contact information of Fandom registered users. ████████████████████

17        Plaintiff therefore proposes a well-defined class that, for the reasons stated below, satisfies each

18   of the requirements of Rule 23(a) and Rule 23(b)(3) or, alternatively, (c)(4).

19      **A.**     **The Requirements of Rule 23(a) Are Met.**

20          **1.**     **The Class is Sufficiently Numerous.**

21        The numerosity requirement of Rule 23(a) is met because "joinder of all members is

22   impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is generally met when the proposed class contains

23   at least 40 members. *See Akaosugi v. Benihana Nat'l Corp.*, 282 F.R.D. 241, 253 (N.D. Cal. 2012). "In

24

25

26   [6] The Class is narrower than the one set forth in the operative Second Amended Class Action Complaint
    (Dkt. No. 41 at 9) because the Facebook User ID is tied to a Facebook profile and because Meta's

27   records ███████████████ *See Sandoval v. Cnty. of Sonoma*, 2015 WL
    1926269, at *2 (N.D. Cal. Apr. 27, 2015) (stating "[t]here is no rule that the definition of a certified class

28   must exactly match the definition contained in a complaint" and that plaintiffs can narrow the definition
    when moving for class certification).

1  determining whether numerosity is satisfied, the Court may consider reasonable inferences drawn from

2  the facts before it." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 589-90 (N.D. Cal. 2015).

3         Numerosity is readily satisfied because a conservative sampling of Meta's records ███████

4  ████████████████████████████████████████████████████████████████████

5  ██████████████████████████████████████████████████     ██   ███

6  █████████████████████        *see West v. California Servs. Bureau, Inc.*, 323 F.R.D. 295, 304 (N.D.

7  Cal. 2017) (sampling of phone numbers established numerosity in Telephone Consumer Protection Act

8  class action); *see also West v. California Servs. Bureau, Inc.*, 323 F.R.D. 295, 303 (N.D. Cal. 2017)

9  (court may make "common-sense assumptions" regarding numerosity) (citation omitted).

10        **2.    Commonality is Satisfied.**

11        "The commonality requirement of Rule 23(a)(2) requires plaintiffs seeking class certification

12  to show that their claims 'depend upon a common contention' that 'is capable of classwide

13  resolution—which means that determination of its truth or falsity will resolve an issue that is central to

14  the validity of each one of the claims in one stroke.'" *A.B. v. Hawaii State Dep't of Educ.*, 30 F.4th

15  828, 839 (9th Cir. 2022) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

16  Commonality is "construed permissively" and it does not require that all questions of fact and law be

17  common to the class. *Chinitz v. Intero Real Est. Servs.*, 2020 WL 7391299, at *8 (N.D. Cal. July 22,

18  2020) (citation omitted). Moreover, the common question does not have to be answered in favor of the

19  class. *See Opperman v. Path, Inc.*, 2016 WL 3844326, at *4 (N.D. Cal. July 15, 2016).

20        Commonality is met because the common contentions in this case revolve around Fandom's use

21  of the Pixel. *See Brown v. Google, LLC*, 2022 WL 17961497, at *14 (N.D. Cal. Dec. 12, 2022)

22  (common questions included whether the defendant was improperly collecting and using private user

23  information). These questions include: (1) whether Fandom is a "video tape service provider"; (2)

24  whether Fandom intentionally installed the Pixel on its website; and (3) whether during the class period,

25  the Pixel on Fandom's website was configured to transmit information constituting "personally

26  identifying information" under the VPPA. *See Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 533 (E.D.

27  ───────────────────────
   [7] Plaintiff calculated this number by reference ████████████████████████████

28  ████████████████████████████████████████████████

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
Case No. 4:22-cv-04423-JST

Mich. 2015) (finding with respect to the similar Michigan Video Rental Privacy Act ("VRPA") that common questions included whether the defendant was a business subject to the law and disclosed identifying information). Because the answer to these questions are at the heart of Plaintiff and every Class member's VPPA claims, the commonality requirement is met. *See Martinez v. Blu Prod., Inc.*, 2019 WL 12838199, at *3 (C.D. Cal. Oct. 3, 2019) ("[T]here appears to be a number of sufficiently-important common questions here including: Did the phones in question include firmware that continuously captured and transmitted Plaintiffs' personally identifiable information?").

### 3.   Plaintiff's VPPA Claim is Typical of the Claims of Other Class Members.

"Like the commonality requirement, the typicality requirement [of Rule 23(a)(3)] is permissive and requires only that the representative's claims are reasonably co-extensive with those of absent class members." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quotation marks and citation omitted). "The test for typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Scholl v. Mnuchin*, 489 F. Supp. 3d 1008, 1044 (N.D. Cal. 2020) (quotation marks and citation omitted). "The typicality inquiry focuses on the claims, not the specific facts underlying them." *Immigrant Defs. L. Ctr. v. Mayorkas*, 2023 WL 3149243, at *49 (C.D. Cal. Mar. 15, 2023).

Plaintiff Beke's claim against Fandom is reasonably co-extensive with that of the Class. All are Fandom subscribers who watched videos on its website while logged into their Facebook accounts and were each similarly harmed in having their Facebook User ID and video choices transmitted to Meta. Because Plaintiff and Class members' claims "arise[] from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability", the typicality requirement is met. *Brown*, 2022 WL 17961497, at *16 (citation omitted); *see Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 267 (N.D. Cal. 2011) (typicality met when "[a]ll members of the putative class were allegedly injured by the same course of conduct[.]").

### 4.   Plaintiff and His Counsel Will Adequately Represent the Class.

Plaintiff Beke and his counsel will "fairly and adequately protect the interests of the class" because (1) they do not have any conflicts of interest with other Class members and (2) have

1  vigorously prosecuted this proposed class action throughout this litigation. *See Staton v. Boeing Co.*,

2  327 F.3d 938, 957 (9th Cir. 2003) (outlining adequacy standard); Fed. R. Civ. P. 23(a)(4).

3        Plaintiff has no conflicts of interest with the other class members. Beke Decl. ¶ 10; *see City of*

4  *Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2022 WL 1459567, at *5 (N.D. Cal. May 9,

5  2022) (plaintiffs adequate when there was "no indication" of any conflicts). Plaintiff has demonstrated

6  that he is an adequate class representative willing to vigorously prosecute this action through trial. *See*

7  *In re Intuitive Surgical Sec. Litig.*, 2016 WL 7425926, at *7 (N.D. Cal. Dec. 22, 2016) ("To establish

8  adequacy, class representatives generally need only to be familiar with the basis for the suit and their

9  responsibilities as lead plaintiffs such that they can uphold their obligations to other class members.")

10  (quotation marks and citation omitted). Plaintiff has already made significant contributions to the

11  litigation, including by assisting in preparing the complaints, gathering records, responding to written

12  discovery requests, giving a deposition, and consulting with counsel on case developments and

13  strategy. Beke Decl. ¶ 11. *See Castro v. ABM Indus., Inc.*, 325 F.R.D. 332, 342 (N.D. Cal. 2018)

14  (plaintiffs were adequate when they "have been active participants in the litigation").

15        Plaintiff's counsel have also demonstrated their adequacy under Rule 23(g), which focuses on

16  "(1) the work counsel has done in identifying or investigating potential claims in the action; (2)

17  counsel's experience in handling class actions or other complex litigation and the type of claims in the

18  litigation; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will

19  commit to representing the class." *Scholl*, 489 F. Supp. 3d at 1045. The attorneys working on this case

20  are experienced in prosecuting privacy and consumer class actions, including VPPA claims. *See* Grille

21  Decl. ¶¶ 11-13. They have dedicated ample time and resources to investigating, pleading, and pursuing

22  these claims, and demonstrated their knowledge of the applicable law through extensive motion

23  practice, including in opposing Fandom's motion to dismiss and its summary judgment motion. *Id.* ¶¶

24  3-10. Accordingly, Plaintiff requests that the Court appoint Girard Sharp LLP to serve as class counsel

25  under Rule 23(g). *See, e.g., In re PFA Ins. Mktg. Litig.*, 2021 WL 5994908, at *10 (N.D. Cal. Nov. 3,

26  2021) (finding Girard Sharp adequate to serve as class counsel); *In re JUUL Labs, Inc., Mktg. Sales*

27  *Pracs. & Prod. Liab. Litig.*, 609 F. Supp. 3d 942, 1023 (N.D. Cal. 2022) (same).

28

1

**B.      Common Issues Predominate Regarding Fandom's VPPA Violations.**

2

**1.      Fandom's VPPA Liability Can Be Determined on a Classwide Basis.**

3

"The requirement under Rule 23(b)(3) that common questions predominate over individual ones

4

'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *DZ*

5

*Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1232-33 (9th Cir. 2024) (citation omitted). Though

6

predominance does not require that "all questions be common," the Court must consider: (1) "which

7

questions are central to the plaintiffs' claim"; (2) "which of these questions are common to the class and

8

which present individualized issues"; and (3) "whether the common questions predominate over the

9

individual questions." *Id.* at 1233 & 1238; *see Olean*, 31 F.4th at 666-67.

10

The predominance analysis "begins, of course, with the elements of the underlying cause of

11

action." *DZ Rsrv.*, 96 F.4th at 1233 (quotation marks and citation omitted). To establish liability under

12

the VPPA, a plaintiff must show that "(1) a defendant is a 'video tape service provider,' (2) the

13

defendant disclosed 'personally identifiable information concerning any customer' to 'any person,' (3)

14

the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)."

15

*Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). Because whether Fandom violated the

16

VPPA in its implementation of the Meta Pixel can be determined in a single class proceeding, using

17

common evidence, predominance is met. *See Alcazar v. Fashion Nova, Inc.*, 2022 WL 19975445, at *2

18

(N.D. Cal. Sept. 6, 2022) ("Whether Fashion Nova's website complies with those laws or whether it

19

violates them can be answered in one fell swoop.").[8]

20

First, Fandom's status as a "video tape service provider" will be answered—up or down—for the

21

entire class using common proof based on whether Fandom is substantially involved in delivering video

22

23

---

[8] Courts have repeatedly granted class certification in cases involving alleged violations of privacy laws,

24

including analogous statutes such as the Michigan VRPA and the Driver's Privacy Protection Act
("DPPA"), because the central questions regarding the defendant's alleged statutory violation is common

25

to the class and susceptible to a single classwide determination. *See, e.g.*, *Coulter-Owens*, 308 F.R.D. at
524 (certifying class as to VRPA claim); *Wilcox v. Swapp*, 330 F.R.D. 584 (E.D. Wash. 2019) (granting

26

class certification for DPPA claim); *Haney v. Recall Ctr.*, 282 F.R.D. 436 (W.D. Ark. 2012) (same); *see
also, e.g.*, *In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535 (N.D. Cal. 2018); *Rodriguez v.*

27

*Google LLC*, 2024 WL 38302, at *1 (N.D. Cal. Jan. 3, 2024); *Harris v. comScore, Inc.*, 292 F.R.D. 579,
589 (N.D. Ill. 2013); *Brooks v. Thomson Reuters Corp.*, 2023 WL 9316647, at *11 (N.D. Cal. Aug. 10,

28

2023); *Melvin v. Sequencing, LLC*, 344 F.R.D. 231, 235 (N.D. Ill. 2023).

content to its subscribers and if its business is "also significantly tailored to serve that purpose." *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017). Uniform evidence shows that Fandom is actively involved in conveying prerecorded video content to registered users. Among other things, ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████ Fandom's business ████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████████████████

Second, whether Fandom disclosed personally identifiable information to Meta will also turn on classwide evidence. *See Ade v. Viki, Inc.*, 2024 WL 1880153, at *3 (N.D. Cal. Mar. 28, 2024) (the VPPA prohibits revealing titles of videos a subscriber viewed); *see also Aldana v. GameStop, Inc.*, 2024 WL 708589, at *7 (S.D.N.Y. Feb. 21, 2024) ("plain language of the VPPA" also prohibits disclosing the subject matter of videos viewed or requested) (citing 18 U.S.C. § 2710(b)(1)(D)) ). Common evidence will show whether Fandom disclosed the specific video content, including the title and subject matter, that its subscribers requested or obtained. The record, for instance, shows that the Pixel programmed on Fandom's website transmitted event data (video URLs and both metadata and button click data corresponding to video content) together with cookies that allow Meta to match the event to a particular Facebook user. ████ ███████████████████████████████████████████ Shafiq ¶¶ 37-56. Plaintiff's expert, Professor Shafiq, explains that the source code for Fandom's website includes metadata that not only identifies the URL but also identifies video content, including title, subject matter, and other information sufficient to identify the content, and that Fandom configured its Pixel to share this information to Meta. Shafiq ¶ 16-26, 36, 38, 46-47, 49, 52-53. *See Svoboda v. Amazon.com, Inc.*, 2024 WL 1363718, at *9 (N.D. Ill. Mar. 30, 2024) ("Plaintiffs submit evidence to show works (at least at a high level) the same for everyone in

1  the class, as well as evidence that Amazon uniformly made no BIPA-compliant disclosures to, and

2  obtained no written releases from, any of its VTO users."). Meta's records █████████████████████

3  ████████████████████████████████████████████████████

4  ██████████████████████████ and Meta's Rule 30(b)(6) witness ██████████████████

5  ████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████

7  ██████████████████████████████████

8         Third, the answer to the question of whether Fandom's disclosures to Meta were made

9  knowingly will be the same for the entire Class. *See Wilcox*, 330 F.R.D. at 594 (knowledge element of

10  DPPA claim was a predominant question susceptible to class resolution). Fandom configured the source

11  code on its website to identify the contents of the page, including video materials, and specifically set up

12  its Pixel to transmit this information, along with cookies, to Meta. Shafiq Rpt. ¶ 27-31, 40-42, 45-51.

13  The transmission of this data was evident by looking at the Pixel's source code and "network

14  transmissions." Shafiq Rpt. ¶¶ 35-41, 45-51. ████████████████████████████████

15  ████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████

23  ███████████████████████████████████████████

24  █████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████

26  ████████████████████████████████████████ Fandom's knowledge is therefore

27  another predominant question in this case that is susceptible to common proof. *See Wilcox*, 330 F.R.D. at

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
Case No. 4:22-cv-04423-JST

593 ("whether Defendants knowingly obtained the class members' personal information" was a predominant question).

Fourth, while consent may be a defense under the VPPA, whether Fandom's disclosures to Meta were authorized under the VPPA will not vary between Class members and will instead be answered by common evidence because Fandom's Terms of Use and Privacy Policies are form agreements that applied equally to every Class member during the class period. None of the versions of these agreements, which are all substantially similar, satisfied consent in a manner complaint with 18 U.S.C § 2710(b)(2). ████ ███████████████████████████████████████████████ ████████████████████████████████████ ██████████████████████████████████ Accordingly, consent presents a central question that can be answered at once for the entire class.

### 2. Calculating Damages Will Be Straightforward Because the VPPA Provides for Statutory Damages.

The VPPA provides for minimum statutory damages of $2,500. 18 U.S.C. § 2710(c)(2). This obviates the need for complex damages calculations. *See In re Hulu Priv. Litig.*, 2013 WL 6773794, at *8 (N.D. Cal. Dec. 20, 2013) (holding that actual injury is not a prerequisite to obtaining statutory damages under the VPPA); *see also Lytle v. Nutramax Lab'ys, Inc.*, 99 F.4th 557, 571 (9th Cir. 2024) (plaintiffs do not need to "prove that classwide damages exist in order to obtain class certification" but only show "that damages *could* be calculated on a classwide basis, even where such calculations have not yet been performed."); *Vaquero v. Ashley Furniture Industries, Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016) ("the need for individual damages calculations does not, alone, defeat class certification").

Damages calculations do not defeat predominance here because the VPPA's statutory damages means "damages are feasibly and efficiently calculated[.]" *Wilcox*, 330 F.R.D. at 595 (addressing similar damages provision of the DPPA); *Gold v. Midland Credit Mgmt., Inc.*, 306 F.R.D. 623, 633 (N.D. Cal. 2014) (stating that statutory damages "will involve [a] less stringent individualized inquiry"). Plaintiff intends to seek the minimum statutory "liquidated damages" of $2,500 under 18 U.S.C. § 2710(c)(2)(A) for each Class member. As discussed in greater detail above, Fandom and Meta's records can reliably identify Class members and can account for whether or not Fandom's subscribers were logged into Facebook or blocking cookies. Determining classwide damages will therefore be a simple matter of

applying the statutory minimum of $2,500 across the Class. *See, e.g.*, *Coulter-Owens*, 308 F.R.D. at 536 ("[W]hether each class member was damaged is not an issue. As explained above, plaintiff is proceeding under a statutory damages theory. Each disclosure, by statute, entitles recovery of $5,000.00, a sum certain."); *Doe v. Mindgeek USA Inc.*, 702 F. Supp. 3d 937, 950 (C.D. Cal. 2023) ("Plaintiff seeks considerable statutory damages, which supports a finding of predominance."); *Romero v. Securus Techs., Inc.*, 331 F.R.D. 391, 411 (S.D. Cal. 2018) (rejecting argument that individualized damages inquiries would predominate because the statute in question provided for statutory damages).

In sum, because "the critical elements of Plaintiffs' claims . . . are common questions capable of class-wide proof" and individual damages can be calculated efficiently, the predominance requirement of Rule 23(b)(3) is met. *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 2023 WL 1813530, at *13 (C.D. Cal. Feb. 7, 2023).

### C.   A Single Class Proceeding is Superior to Individual Adjudication.

"Rule 23(b)(3) requires a court to consider whether a class action would be a superior method of litigating the claims of the proposed class members[.]" *Vizcarra v. Unilever United States, Inc.*, 2023 WL 2364736, at *18 (N.D. Cal. Feb. 24, 2023). When, as is the case here, individual recoveries would be relatively small and individual litigation would needlessly duplicate discovery and expert work, it is "an inferior method of adjudication." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1176 (9th Cir. 2010). Class members have little incentive to pursue individual VPPA claims against Fandom—and there have been no such cases to date—when it will entail litigating highly technical issues over the implementation of the Meta Pixel on Fandom's website and Fandom has strenuously defended itself at every stage of the case. While the VPPA provides for statutory damages, those damages are dwarfed by the cost necessary to individually vindicate their claims. *See Alcazar v. Fashion Nova, Inc.*, 2022 WL 19975445, at *4 (N.D. Cal. Sept. 6, 2022) (availability of $4,000 in statutory damages was not enough to incentivize individual litigation because "that sum pales in comparison with the cost of pursuing litigation") (citation omitted); *Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*, 2014 WL 4627271, at *14 (C.D. Cal. Sept. 8, 2014) ("[T]he Court is not persuaded that $5,000 in damages is so clearly sufficient to motivate individual litigation involving complex factual and legal issues as to weigh against class certification.").

Superiority is also satisfied because a class proceeding will not pose manageability problems. To start with, there is a "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." *Briseno*, 844 F.3d at 1128 (citation omitted). The fact "the class is not seeking actual damages" but statutory damages shows that damages will not pose manageability concerns. *Tapia-Rendon v. United Tape & Finishing Co.*, 2023 WL 5228178, at *8 (N.D. Ill. Aug. 15, 2023). The question of manageability also "depends largely on" whether the Class claims rise or fall on common evidence. *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 374 (N.D. Cal. 2018). The attached proposed trial plan (Ex. 51) shows how a class proceeding will be manageable because each element required to establish Fandom's liability will be decided for or against the Class based on classwide proof. "Because the witness testimony and evidence put forth in this trial plan applies to each of the individual class members' claims, it would be duplicative and a waste of judicial resources to try these claims individually." *Smith v. Pathway Fin. Mgmt., Inc.*, 2012 WL 12884448, at *8 (C.D. Cal. Nov. 26, 2012).

A class action is therefore superior to other methods of adjudicating this controversy.

### D.    The Class Can Also Be Certified as to Key Liability Issues Under Rule 23(c)(4).

"Even if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). An issues class under Rule 23(c)(4) is appropriate if it "would significantly advance the resolution of the underlying case, thereby achieving judicial economy and efficiency." *Id.* at 1229. A class can be certified under Rule 23(c)(4) "even where predominance has not been satisfied for the cause of action as a whole." *Hall v. Marriott Int'l, Inc.*, 2024 WL 3367518, at *4 (S.D. Cal. July 10, 2024) (citations omitted).

If the Court finds that predominance is not met with respect to Plaintiff's VPPA claim, certifying the Class as to the main issues concerning Fandom's liability—e.g., whether it is a "video tape service provider" or whether its disclosures were made "knowingly"—would materially advance the resolution of this case by "streamlin[ing] the evidence needed to prove liability at trial." *Cai v. CMB Exp. LLC*, 2024 WL 2334509, at *13 (C.D. Cal. Apr. 4, 2024). Plaintiff therefore requests that the Court, in the

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
Case No. 4:22-cv-04423-JST

alternative, certify the Class under Rule 23(c)(4) as to the issues of Fandom's liability discussed above in section V.B.1.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court certify the Class and appoint him as class representative, appoint Girard Sharp LLP as class counsel, and direct the parties to submit a proposed plan of notice.

Dated: August 22, 2024

By: _/s/ Simon S. Grille_
Adam E. Polk (SBN 273000)
Simon Grille (SBN 294914)
Reid Gaa (SBN 330141)
Anthony Rogari (SBN 353784)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
apolk@girardsharp.com
sgrille@girardsharp.com
rgaa@girardsharp.com
arogari@girardsharp.com

*Attorneys for Plaintiff*

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
Case No. 4:22-cv-04423-JST

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record. I also caused a copy of the under-seal documents to be served *via electronic mail*.

/s/ Simon S. Grille
Simon S. Grille

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION
Case No. 4:22-cv-04423-JST